IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
June 8, 2006 Session

## JERRY WAYNE LYNCH v. CITY OF JELLICO, ET AL.

**Direct Appeal from the Chancery Court Campbell County**
**No. 05-100     Billy Joe White, Chancellor**

_____

**No. E2006-00208-SC-R3-CV - Filed on August 30, 2006**
_____

**AND**

## DAVID A. LOZANO v. LINCOLN MEMORIAL UNIVERSITY, ET AL.

**Direct Appeal from the Chancery Court Claiborne County**
**No. 150-63     Billy Joe White, Chancellor**

_____

**No. E2006-00207-SC-R3-CV - Filed on August 30, 2006**
_____

In these consolidated workers' compensation appeals, we are asked to decide the constitutionality of various provisions of the Workers' Compensation Reform Act of 2004. Specifically at issue is whether the benefit review conference requirement embodied in Tennessee Code Annotated sections 50-6-203(a) (2005), 50-6-225(a)(1) (2005), and 50-6-239(b) (2005), violates the due process protections of the Tennessee or United States Constitutions, the separation of powers doctrine in article II, sections 1 and 2 of Tennessee's Constitution, or the open courts doctrine found in article I, section 17, of the Tennessee Constitution. Additionally, we are asked to decide whether the method used to determine permanent partial disability benefits, namely the multiplier provisions of Tennessee Code Annotated section 50-6-241(d)(1)(A) (2005) used in conjunction with the American Medical Association Guides to the Evaluation of Permanent Impairment ("AMA Guides"), violates equal protection; due process; the Tennessee Human Rights Act, Tennessee Code Annotated section 4-21-101 (2005); and the Tennessee Handicap Act, Tennessee Code Annotated section 8-50-103(a) (2002). The trial judge determined that each of these provisions of the Workers' Compensation Reform Act of 2004–the benefit review conference, the multiplier, and use of the AMA Guides–is unconstitutional. After carefully considering the record and relevant authority, we conclude that the trial judge erred. Accordingly, the trial court's judgments are reversed.

**Tenn. Code Ann. § 50-6-225(e); Judgments of the Trial Court Reversed; Remanded**

CORNELIA A. CLARK, J., delivered the opinion of the court, in which WILLIAM M. BARKER, C.J., E. RILEY ANDERSON, ADOLPHO A. BIRCH, JR., and JANICE M. HOLDER, JJ., joined.

Paul G. Summers, Attorney General and Reporter, and Juan G. Villaseñor, Assistant Attorney General, for the Appellants, State of Tennessee and Attorney General Paul G. Summers.

Jennifer M. Caywood and Chris Myatt, Knoxville, Tennessee, for the Appellants, Lincoln Memorial University and St. Paul Travelers Insurance Company.

John T. Batson, Jr., and Hanson R. Tipton, Knoxville, Tennessee, for the Appellant City of Jellico.

David H. Dunaway, LaFollette, Tennessee, for the Appellees David A. Lozano and Jerry Wayne Lynch.

Andrew C. Clarke and R. Sadler Bailey, Memphis, Tennessee, for the Amicus Curiae, Tennessee Trial Lawyers Association.

## OPINION

### Factual and Procedural Background

The facts in these workers' compensation cases are few and, for purposes of this appeal, undisputed. On May 25, 2005, Jerry Wayne Lynch filed a workers' compensation action in the Campbell County Chancery Court against his employer, the City of Jellico, as well as the Second Injury Fund, the State of Tennessee, and Paul G. Summers in his capacity as Attorney General. The suit alleged that on February 21, 2005, the plaintiff discovered that he had work-related bilateral carpal tunnel syndrome for which he was entitled to workers' compensation benefits. The complaint also alleged that on March 29, 2005, the plaintiff was in the back of a dump truck removing a salt spreader at work when he fell out of the truck, injuring his neck and back.

On September 9, 2005, David A. Lozano filed a workers' compensation action in the Claiborne County Chancery Court against his employer, Lincoln Memorial University, and the employer's insurer, St. Paul Travelers Insurance Company. Also named as a defendant was Paul G. Summers in his capacity as Attorney General. The complaint alleged that the plaintiff was entitled to workers' compensation benefits for injuries suffered in a fall on the employer's premises on February 11, 2005. According to the complaint, the fall resulted in injuries to the plaintiff's arms, back, and legs.

Although the plaintiffs filed separate actions in separate courts, they both challenge the constitutionality of key provisions of the Workers' Compensation Reform Act of 2004, namely, the mandatory benefit review conference, the cap on benefits for permanent partial disability, and use of the AMA Guides to determine anatomical impairment. Specifically, the plaintiffs claim that the mandatory benefit review conference found in Tennessee Code Annotated sections 50-6-203(a), 50-6-225(a)(1), and 50-6-239(b), violates the due process protections of the Tennessee and United States Constitutions, the separation of powers doctrine in article II, sections 1 and 2 of Tennessee's Constitution, and the open courts doctrine embodied in article I, section 17, of the Tennessee Constitution, Supreme Court Rule 11(VII)(b), and Tennessee Code Annotated section 50-6-225. The plaintiffs also challenge the method used to determine permanent partial disability benefits, specifically the multiplier provisions of Tennessee Code Annotated section 50-6-241(d)(1)(A) and use of the AMA Guides to determine anatomical impairment. The plaintiffs claim that Tennessee Code Annotated section 50-6-241(d)(1)(A), which imposes a cap on permanent partial benefits of 1.5 times the employee's anatomical impairment rating if the employee returns to work at a greater or equal wage, used in conjunction with the AMA Guides to determine anatomical impairment, violates equal protection; due process; the Tennessee Human Rights Act ("THRA"), Tennessee Code Annotated section 4-21-101 (2005); and the Tennessee Handicap Act ("THA"), Tennessee Code Annotated section 8-50-103(a) (2002).

The plaintiffs each filed a motion for summary judgment on the constitutional questions. The State of Tennessee filed a motion for judgment on the pleadings in each case, contending that (1) the challenged statutes were constitutional, (2) the plaintiffs' claims should be dismissed because they failed to participate in the mandatory benefit review conference, and (3) the plaintiffs lacked standing. The employers in each case filed a motion to dismiss based on the plaintiffs' failure to exhaust the benefit review conference process.

The trial judge in both cases, Chancellor Billy Joe White, held that the mandatory benefit review conference violated the separation of powers doctrine in article II, sections 1 and 2, of Tennessee's Constitution; procedural and substantive due process under the state and federal constitutions; and the open courts doctrine embodied in article I, section 17, of Tennessee's Constitution, Supreme Court Rule 11(VII)(b),[1] and Tennessee Code Annotated section 50-6-225. The trial judge also found that the multiplier provisions contained in Tennessee Code Annotated section 50-6-241(d)(1)(A) violated equal protection and due process. Finally, the trial court struck down sections 50-6-241(a)(1), -241(b), and -241(c)–which require use of the AMA Guides to determine anatomical impairment–as violating equal protection, due process, the THRA, and the THA. Pursuant to Tennessee Rule of Civil Procedure 54.02, the trial court's order in each case was declared to be final "only as to the [plaintiffs'] constitutional claims adjudicated herein." Thus, the

---

[1] The trial court's orders cite to Tennessee Supreme Court Rule 11(VII)(c), which sets out the procedure for appointing substitute trial judges. The trial court apparently meant to cite Rule 11(VII)(b), which states that "it is the policy of the Tennessee Judicial Department that all courts of this state shall be open and available for the transaction of business. . . ."

-3-

compensability of the plaintiffs' workers' compensation claims and the extent of their vocational disability, if any, have yet to be determined.

The defendant employers, along with the State of Tennessee, appealed the trial court's decision in each case. This Court subsequently consolidated and transferred the cases to the full Court prior to a hearing before the Special Workers' Compensation Appeals Panel. For the reasons explained below, we reverse the trial court's judgment in both cases.

**Standard of Review**

This appeal involves questions of law only. Therefore, the standard of review is de novo without any presumption of correctness given to the legal conclusions of the trial court. Taylor v. Fezell, 158 S.W.3d 352, 357 (Tenn. 2005). Further, it is well-established in Tennessee that when considering the constitutionality of a statute, we start with a strong presumption that acts passed by the legislature are constitutional. See Osborn v. Marr, 127 S.W.3d 737, 740-41 (Tenn. 2004). Indeed, "we must indulge every presumption and resolve every doubt in favor of constitutionality." Vogel v. Wells Fargo Guard Servs., 937 S.W.2d 856, 858 (Tenn. 1996). Therefore, notwithstanding the trial judge's findings in the present case, we must begin our inquiry with the presumption that the statutes in question pass constitutional muster.

Likewise, it is well recognized that a facial challenge to a statute, such as that involved here, is "the most difficult challenge to mount successfully since the challenger must establish that no set of circumstances exist under which the Act would be valid." Davis-Kidd Booksellers, Inc. v. McWherter, 866 S.W.2d 520, 525 (Tenn. 1993) (quoting United States v. Salerno, 481 U.S. 739, 745 (1987)). Thus, the plaintiffs in this appeal have a heavy legal burden in challenging the constitutionality of the statutes in question.

**Analysis**

**Introduction**

The purpose of the Tennessee Workers' Compensation Law, which was originally enacted in 1919, is to relieve society of the burden of providing compensation to injured workers and to put that burden on the industry employing the worker. See Scott v. Nashville Bridge Co., 223 S.W. 844, 849 (Tenn. 1920). Since its inception, Tennessee's workers' compensation system has been challenged a number of times without success. See Vogel, 937 S.W.2d 856; Brown v. Campbell County Bd. of Educ., 915 S.W.2d 407 (Tenn. 1995); Kelley v. 3-M Co., 639 S.W.2d 437 (Tenn. 1982); Nichols v. Benco Plastics, Inc., 469 S.W.2d 135 (Tenn. 1971); Mitchell v. Usilton, 242 S.W. 648 (Tenn. 1922); Vantrease v. Smith, 227 S.W. 1023 (Tenn. 1921); Scott, 223 S.W. 844.

In addition to surviving a number of constitutional challenges throughout its history, the Workers' Compensation Law has been modified numerous times, most recently in 2004 with the passage of the Workers' Compensation Reform Act, 2004 Tenn. Pub. Acts 962. In passing the Act,

the legislature recognized that "significant cost savings will result" to employers, and that "[i]t is in the best interest of the citizens of Tennessee that such cost savings be passed to the entities that have paid faithfully workers' compensation premiums in order to ensure the economic well-being of their employees." 2004 Tenn. Pub. Acts 962, § 42(a). Thus, the stated purpose of the Act was to make the workers' compensation system less costly for employers.

## I. Benefit Review Conference

As part of the Workers' Compensation Reform Act of 2004, the legislature decided that parties having a workers' compensation dispute over injuries occurring after January 1, 2005, must exhaust an administrative process, called a benefit review conference, before filing suit. See Tenn. Code Ann. § 50-6-203(a) ("[n]o claim for compensation under [the] Workers' Compensation Law . . . shall be filed with a court . . . until the parties have exhausted the benefit review conference process. . . ."); Tenn. Code Ann. § 50-6-225(a)(1) ("in case of a dispute over or failure to agree upon compensation under the Workers' Compensation Law. . . the parties shall first submit the dispute to the benefit review conference process. . . ."); Tenn. Code Ann. § 50-6-239(b) ("The parties to a dispute shall attend and participate in a benefit review conference. . . as a condition precedent to filing a complaint with a court. . . ."). The benefit review conference is a nonadversarial, informal dispute resolution proceeding designed to mediate and resolve workers' compensation matters. See Tenn. Code Ann. § 50-6-102(4) (2005). Only when the parties cannot reach an agreement at the benefit review conference may they proceed to court.

### A. Due Process

The plaintiffs argue that, as mandatory mediation, the benefit review conference denies injured workers access to the courts and therefore violates both procedural and substantive due process. The trial judge agreed, concluding that the benefit review conference "deprive[s] injured workers . . . of [their] rights to a trial by judge or an individual otherwise learned in the law."

The defendants respond that the benefit review conference process does not violate due process because injured employees can still present their workers' compensation claims to a court–they just have to participate in the benefit review process first. Thus, the defendants maintain that the trial court erred in ruling that the benefit review conference deprives injured workers of their right to be heard by a judge. The defendants also assert that the State has legitimate interests in requiring workers to exhaust the benefit review process prior to filing suit. These interests include protecting the rights of injured workers in facilitating a prompt resolution of claims without litigation, reducing workers' compensation insurance premiums for employers, and maintaining a competitive job market for the state as a whole.

We begin our analysis of this issue by noting that the due process clause of the Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. We have previously held that article I, section 8 of the Tennessee Constitution, which provides that "no man shall be taken or imprisoned, or disseized

of his freehold, liberties or privileges, or outlawed, or exiled, or in any manner destroyed or deprived of his life, liberty or property, but by the judgment of his peers or the law of the land," is synonymous with the due process provisions of the federal constitution. Willis v. Tenn. Dep't of Corr., 113 S.W.3d 706, 711 n.4 (Tenn. 2003).

Due process under the state and federal constitutions encompasses both procedural and substantive protections. The most basic principle underpinning procedural due process is that individuals be given an opportunity to have their legal claims heard at a meaningful time and in a meaningful manner. See Logan v. Zimmerman Brush Co., 455 U.S. 422, 429-30 (1982); Manning v. City of Lebanon, 124 S.W.3d 562, 566 (Tenn. Ct. App. 2003). In contrast, substantive due process limits oppressive government action, such as deprivations of fundamental rights like the right to marry, have children, make child rearing decisions, determine child custody, and maintain bodily integrity. See Washington v. Glucksberg, 521 U.S. 702, 720 (1997); Hawk v. Hawk, 855 S.W.2d 573 (Tenn. 1993). Substantive due process claims may be divided into two categories: (1) deprivations of a particular constitutional guarantee and (2) actions by the government which are "arbitrary, or conscience shocking in a constitutional sense." Collins v. City of Harker Heights, 503 U.S. 115, 128 (1992); Valot v. Southeast Local Sch. Dist. Bd. of Educ., 107 F.3d 1220, 1228 (6th Cir. 1997). In short, substantive due process bars certain government action regardless of the fairness of the procedures used to implement them. County of Sacramento v. Lewis, 523 U.S. 833, 840 (1998).

Applying these principles to this case, we are persuaded that the plaintiffs have failed to establish that the mandatory benefit review conference is inconsistent with basic notions of fairness or fair process. The benefit review requirement does not preclude injured workers from presenting their workers' compensation claims to a court. The law is clear that "[i]n the event the parties are unable to reach an agreement at the benefit review conference . . . either party may file a civil action . . . in the circuit or chancery court." Tenn. Code Ann. § 50-6-225(a)(2).

Because injured workers are free to file suit and have their rights judicially determined upon exhausting the benefit review process, they are not, as argued by the plaintiffs, deprived of their right to be heard by a judge. In fact, the parties agree that the legislature could, if it desired, remove workers' compensation cases from the court system and make the determination of benefits administrative in nature. Most jurisdictions have done just that. See Larson, Workers' Compensation Law, § 124.01 (2005) ("The initial handling of claims, and perhaps the first review, are administrative in all but a few states. The whole idea is to get away from the cumbersome [litigation process], and to reach a right decision by the shortest and quickest possible route.").

Thus, we conclude that the trial judge erred in holding that the mandatory benefit review process embodied in sections 50-6-203(a), 50-6-225(a)(1), and 50-6-239(b), violates procedural due process.

Nor does the mandatory benefit review conference violate substantive due process. While it is certainly important to ensure that workers obtain redress for industrial accidents, the workers'

compensation scheme does not stand on the same footing as those fundamental rights identified by state and federal courts "implicit in the concept of ordered liberty" so as to raise substantive due process concerns. Palko v. Connecticut, 302 U.S. 319, 325 (1937), *overruled on other grounds by* Benton v. Maryland, 395 U.S. 784 (1969); Vogel, 937 S.W.2d at 858 ("workers' compensation benefits are not deemed to be fundamental rights"). Indeed, the plaintiffs have not shown the deprivation of *any* particular constitutional right, much less a fundamental one. In addition, we are not persuaded that requiring parties to participate in a benefit review conference prior to seeking redress in the courts is an "arbitrary, or conscience shocking" exercise of the legislature's authority to craft the workers' compensation system. See Collins, 503 U.S. at 128. Thus, we conclude that the trial judge erred in holding that the mandatory benefit review conference violates substantive due process.

## B. Separation of Powers

The trial judge also concluded that the benefit review conference violates the separation of powers doctrine because a workers' compensation specialist, not a judge, conducts the benefit review conference.[2] In urging us to uphold the trial court's finding on this issue, the plaintiffs assert that the benefit review conference "represents a legislative hijacking" of the workers' compensation system away from the judicial branch and in favor of the executive branch.[3] We disagree.

The separation of powers doctrine is contained in article II, sections 1 and 2, of Tennessee's Constitution:

> **Sec. 1. Division of powers.** – The powers of the Government shall be divided into three distinct departments: the Legislative, Executive, and Judicial.
> **Sec. 2. Limitation of powers. –** No person or persons belonging to one of these departments shall exercise any of the powers properly belonging to either of the others, except in the cases herein directed or permitted.

Although the separation of powers doctrine "is a fundamental principle of American constitutional government, . . . it is impossible to preserve perfectly the theoretical lines of demarcation between the executive, legislative and judicial branches of government. There is necessarily a certain amount of overlapping." Underwood v. State, 529 S.W.2d 45, 47 (Tenn. 1975). Accordingly, "[a] legislative enactment which does not frustrate or interfere with the adjudicative

---

[2]The benefit review conference is conducted by a workers' compensation specialist, who is an employee of the commissioner of labor and workforce development. Tenn. Code Ann. § 50-6-236(a) (2005). The legislature has determined that workers' compensation specialists "shall be trained in the principles and procedures of dispute mediation" and receive training "on the department's workers' compensation system, the Tennessee workers' compensation statutes and caselaw, and the rules and regulations of the division of workers' compensation." Tenn. Code Ann. § 50-6-236(f), (m) (2005). In addition, workers' compensation specialists must meet annual continuing education requirements. See Tenn. Code Ann. § 50-6-236(m) (2005).

[3]The plaintiffs also argue that workers' compensation specialists should be licensed attorneys as a way of safeguarding the rights of workers. To the extent there is any merit to this argument, it should be addressed to the legislature.

function of the courts does not constitute an impermissible encroachment upon the judicial branch of government." Id.

Mindful of these principles, we note that the benefit review conference does not substitute for a workers' compensation action. Again, the law clearly provides that "[i]n the event the parties are unable to reach an agreement at the benefit review conference . . . either party may file a civil action . . . in the circuit or chancery court." Tenn. Code Ann. § 50-6-225(a)(2). The courts will ultimately adjudicate a worker's claim if the case is not settled at the benefit review conference. Thus, the benefit review process does not frustrate the adjudicative function of the judicial branch. Accordingly, the trial court erred in finding a separation of powers violation.

## C. Open Courts Doctrine

In addition to finding that the benefit review conference violates due process and separation of powers, the trial court ruled in both cases that the benefit review process violates the open courts doctrine embodied in article I, section 17, of the Tennessee Constitution, Supreme Court Rule 11(VII)(b), and Tennessee Code Annotated section 50-6-225.[4] The trial court's rulings were premised upon the court's belief that injured workers were being denied the right to have their claims heard in court.

The open courts provision of Tennessee's Constitution, article I, section 17, states that "all courts shall be open; and every man, for an injury done him in his lands, goods, person or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial, or delay." Supreme Court Rule 11(VII)(b) reflects this same principle, providing that "it is the policy of the Tennessee Judicial Department that all courts of this state shall be open and available for the transaction of business. . . ."

In arguing that the trial judge's finding on this issue should be upheld, the plaintiffs assert that they seek "nothing more than to keep the courthouse doors open to Tennessee workers so as to ensure access to justice for all." However, as already noted, injured workers can have their rights judicially determined notwithstanding the benefit review conference. Thus, we find that the benefit review conference does not run afoul of the open courts doctrine embodied in article I, section 17, of the Tennessee Constitution. Nor does the benefit review requirement violate Supreme Court Rule 11(VII)(b) or Tennessee Code Annotated section 50-6-225.

## II. The Multiplier Provisions

In addition to imposing a mandatory benefit review conference, the Workers' Compensation Reform Act of 2004 modified the maximum multiplier used to determine permanent partial disability

---

[4] Tennessee Code Annotated section 50-6-225 is a lengthy statute that covers many topics. Neither the trial court nor the plaintiffs cite to a particular part of the statute to support the notion that the benefit review conference violates the open courts doctrine as purportedly reflected in the statute.

benefits. Specifically, for injuries occurring on or after July 1, 2004, the maximum permanent partial disability benefit an employee may receive is 1.5 times his or her medical impairment rating if the worker returns to work with the preinjury employer at an equal or higher wage. Tenn. Code Ann. § 50-6-241(d)(1)(A).[5] If the employee does not return to work with the preinjury employer at an equal or higher wage, the worker may receive up to six times the medical impairment rating. Tenn. Code Ann. § 50-6-241(d)(2)(A). An employee's medical impairment rating is determined by using the AMA Guides or, if the employee's injury is not covered by the AMA Guides, by any appropriate method used and accepted by the medical community. Tenn. Code Ann. § 50-6-204(d)(3)(A).

The trial court ruled in both cases that the multiplier contained in section 50-6-241(d)(1)(A) violates due process and equal protection, reasoning that section 50-6-241(d)(1)(A) results in an "arbitrary reduction of disability benefits." The trial judge also concluded that section 50-6-241(d)(1)(A) "unreasonably classifies injured workers whose injuries are recognized [by the AMA Guides] against those workers whose injuries are not so recognized."

## A. Standing

The defendants contend that the plaintiffs lack standing to challenge the constitutionality of section 50-6-241(d)(1)(A) because they have yet to have their benefits capped by section 50-6-241(d)(1)(A).[6] The trial court did not expressly address this issue, but did so implicitly by resolving the merits of the constitutional claims in favor of the plaintiffs.

To establish standing, a plaintiff must show three elements: (1) a distinct and palpable injury, as opposed to a conjectural or hypothetical injury; (2) a causal connection between the claimed injury and the challenged conduct; and (3) the alleged injury is capable of being redressed by a favorable decision of the courts. See Am. Civil Liberties Union of Tenn. v. Darnell, 195 S.W.3d 612, 620 (Tenn. 2006). Courts employ the doctrine of standing to determine whether a particular litigant is entitled to have a court decide the merits of a dispute. Id. at 619. In other words, standing "precludes courts from adjudicating 'an action at the insistence of one whose rights have not been invaded or infringed.'" Id. at 619-20 (quoting Mayhew v. Wilder, 46 S.W.3d 760, 767 (Tenn. Ct. App. 2001)). Without the limitation of standing, courts would be called upon to decide abstract questions unrelated to the litigants before them.

Guided by these principles, we are persuaded that the plaintiffs have standing to challenge the constitutionality of section 50-6-241(d)(1)(A). According to the plaintiffs' complaints, they each

---

[5]The multiplier was previously 2.5 times the worker's medical impairment rating.

[6]The State makes a distinct argument that the plaintiffs improperly sued the State of Tennessee because of sovereign immunity. The State has not raised sovereign immunity as a defense until now and, therefore, has waived the issue. See In re Adoption of E.N.R., 42 S.W.3d 26, 32 (Tenn. 2001) (issues not raised and decided in the trial court will not be reviewed in the Supreme Court). The State concedes, however, that the Attorney General is a necessary party in any case involving the constitutionality of a statute.

suffered compensable work-related injuries on specific dates while working for specific employers. Taking these allegations as true–as we must at this point in the litigation–the plaintiffs' benefits are subject to the multiplier provisions of section 50-6-241(d)(1)(A) and, for that matter, the benefit review conference provisions in sections 50-6-203(a), -225(a)(1), and -239(b). Thus, we are not confronted with a conjectural or hypothetical dispute. Also, the claims being advanced by the plaintiffs are capable of being redressed by a favorable decision of the courts. Accordingly, these particular plaintiffs are entitled to an adjudication of the particular claims asserted.

## B. Equal Protection

Having determined that the plaintiffs have standing to challenge section 50-6-241(d)(1)(A), we turn to the merits of their equal protection claim. Both the United States and Tennessee Constitutions guarantee to citizens the equal protection of the laws. The Fourteenth Amendment to the United States Constitution provides that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws." Our state constitution provides an equal protection guarantee in article XI, section 8, which states that the

> Legislature shall have no power to suspend any general law for the benefit of any particular individual, nor to pass any law for the benefit of individuals inconsistent with the general laws of the land; nor to pass any law granting to any individual or individuals, rights, privileges, immunitie [immunities] or exemptions other than such as may be, by the same law extended to any member of the community, who may be able to bring himself within the provisions of such law.

We have consistently held that these two constitutional provisions confer the same protections. Brown, 915 S.W.2d at 413.

In analyzing equal protection challenges in the workers' compensation context, the appropriate standard is the rational basis test. Id. Under the rational basis test, our inquiry is whether the classification system in the statute has a reasonable relationship to a legitimate state interest. "Unless the individual challenging the statute can establish that the differences are unreasonable, the statute must be upheld." Id. at 414. If the classification is naturally and reasonably related to that which it seeks to accomplish it has passed the rational basis test and has met constitutional standards. Our task, then, is to determine whether section 50-6-241(d)(1)(A) reasonably relates to legitimate state purposes.

This Court has previously determined that using maximum multipliers in conjunction with the AMA Guides as contemplated by section 50-6-241 is rationally based and does not violate equal protection. In rejecting a previous challenge to the multipliers on equal protection grounds, we stated:

> The multipliers substantially reduce the possibility of similarly situated workers with like injuries and anatomical disability ratings receiving vastly different awards. Reasonable uniformity in statutory awards is a legitimate state interest.
>
> Additionally, the caps provide employees, employers, and their insurers with a measure of predictability since all awards have defined outer limits. Predictability in the law is obviously a desirable and legitimate legislative objective, one that serves the interests of the parties, bench, and bar. In addition to providing a degree of uniformity and predictability, the caps serve the state's interest in keeping workers' compensation insurance premiums from escalating to the point that industry cannot afford them. . . .

Brown, 915 S.W.2d at 414-15. Also important to our analysis in Brown was the fact that the cap on benefits is not absolute–courts have the discretion to exceed them in cases involving substantial vocational obstacles. Id. at 415. Accordingly, the Court in Brown held that the impairment rating model contemplated by section 50-6-241 did not violate equal protection.

Nothing has changed since Brown was decided in 1995, except that the multiplier has been reduced from 2.5 to 1.5 as part of the Reform Act of 2004. The multiplier still reduces the possibility of similarly situated workers with like injuries and anatomical disability ratings receiving vastly different awards. The multiplier still provides employees, employers, and their insurers with a measure of predictability since awards of benefits have defined outer limits. Predictability in the law is still a desirable and legitimate legislative objective, one that serves the interests of the parties, bench, and bar. Moreover, the multiplier still serves the state's interest in keeping workers' compensation insurance premiums from escalating to the point that industry cannot afford them. Finally, trial courts still have the discretion to exceed the multipliers in appropriate cases. See Tenn. Code Ann. § 50-6-242.[7] Thus, the rationale adopted by the Court in Brown in upholding the method of determining permanent partial benefits is just as valid today as it was when Brown was decided. Accordingly, the trial court in this case erred in finding that section 50-6-241(d)(1)(A) violates equal protection.

---

[7]"For those injuries that occur on or after July 1, 2004, and notwithstanding any provision of this chapter to the contrary and in appropriate cases where the employee is eligible to receive the maximum permanent partial disability award under § 50-6-241(d)(1)(B) or (d)(2), the employee may receive disability benefits not to exceed the appropriate maximum number of weeks as set forth in § 50-6-207 for the type of injury sustained by the employee. In such cases, the court or the workers' compensation specialist shall make specific documented findings, supported by clear and convincing evidence, that as of the date of the award or settlement, at least three (3) of the following facts concerning the employee are true:
(1) The employee lacks a high school diploma or general equivalency diploma or the employee cannot read or write on a grade eight (8) level;
(2) The employee is fifty-five (55) years of age or older;
(3) The employee has no reasonably transferable job skills from prior vocational background and training; and
(4) The employee has no reasonable employment opportunities available locally considering the employee's permanent medical condition."

C.  Due Process

The trial judge determined that section 50-6-241(d)(1)(A) violates substantive due process because the statute results in an arbitrary reduction of benefits by capping benefits.[8]  We disagree.

As discussed above, substantive due process limits oppressive government action involving deprivations of a particular constitutional guarantee or government action that is "arbitrary, or conscience shocking in a constitutional sense."  Collins, 503 U.S. at 128; Valot, 107 F.3d at 1228.  Here, the plaintiffs have not shown that the multipliers in section 50-6-241 have deprived them of any particular constitutional guarantee.  Nor are we persuaded that the legislature's decision to use the multiplier model is arbitrary or conscience shocking in a constitutional sense.  Thus, the trial judge erred in concluding that section 50-6-241(d)(1)(A) violates due process.[9]

## III.  AMA Guides

The trial judge also concluded that using the AMA Guides to determine anatomical disability as required by sections 50-6-241(a)(1), (b)-(c), and 50-6-204(d)(3), results in unlawful discrimination.  The trial court reasoned that an individual with medical conditions not addressed by the AMA Guides would be precluded from recovering workers' compensation benefits.  The trial judge also determined that the AMA Guides should not be the sole factor used to measure vocational disability.  Therefore, the trial judge found that using the AMA Guides is "arbitrary, capricious, irrational, and serves no legitimate purpose other than favoring employers."  As such, the trial court concluded in both cases that the use of the AMA Guides violates due process, equal protection, the THRA, and the THA.

A.  Equal Protection and Due Process

Like the plaintiffs in this case, the plaintiffs in Brown argued that using the AMA Guides to determine anatomical impairment violated equal protection because (1) numerical percentage ratings are not provided for certain medical conditions, (2) factors other than a physician's interpretation of anatomical impairment are not considered in determining vocational disability and, (3) the AMA Guides themselves caution against their exclusive use in fashioning awards of vocational disability. Brown, 915 S.W.2d at 415.  We acknowledged in Brown that the AMA Guides do not provide ratings for some impairments and that the AMA Guides caution against their exclusive use in determining vocational impairment. Id.  We concluded, however, that the "reasonable and legitimate state interests applicable to the multipliers–uniformity, fairness and predictability–are equally applicable to the use of the AMA Guides. . . .  If the AMA Guides were not used, medical opinions

---

[8]Section 50-6-241(d)(1)(A) does not implicate procedural due process concerns.

[9]The amicus takes issue with the fact that employees who sustain injuries before July 1, 2004, are treated differently than those who suffer injuries on or after July 1, 2004.  In our view, this disparate treatment does not violate equal protection or due process.

would be more subjective, and perhaps, arbitrary." Id. at 415-16. For this reason, most states use the AMA Guides in workers' compensation cases. Id. at 416.

In addition, we observed in <u>Brown</u> that it "is simply not true" that workers whose injuries are not covered by the AMA Guides receive no benefits. Id. We explained in <u>Brown</u> that the medical impairment rating of workers whose medical problems are not recognized by the AMA Guides may be determined by any appropriate method used and accepted by the medical community. Id. The same holds true today. Tenn. Code Ann. § 50-6-204(d)(3)(A) ("To provide uniformity and fairness for all parties in determining the degree of anatomical impairment sustained by the employee, a [medical expert] shall utilize the applicable edition of the AMA Guides as established in § 50-6-102 *or in cases not covered by the AMA Guides an impairment rating by any appropriate method used and accepted by the medical community*.") (emphasis added).[10]

Finally, the Court in <u>Brown</u> noted that the AMA Guides are not the sole determining factor in setting an award of vocational disability. Specifically, section 50-6-241 required then–and requires now–consideration of all pertinent factors, including lay and expert testimony, the employee's age, education, skills and training, local job opportunities, and capacity to work in the employee's disabled condition. Accordingly, the Court in <u>Brown</u> rejected the argument that use of the AMA Guides violates equal protection.

For the same reasons discussed in <u>Brown</u>, we reiterate today that use of the AMA Guides to determine anatomical impairment does not violate equal protection. Further, we hold that use of the AMA Guides does not violate due process.

## B. THRA and THA

The trial court held in both cases that the multiplier in section 50-6-241(d)(1)(A) used in conjunction with the AMA Guides discriminates against employees in violation of the THRA and the THA. The plaintiffs argue that the trial court's findings on this issue should be upheld because use of the AMA Guides to determine anatomical impairment, along with the lowering of the multiplier from 2.5 to 1.5, "is unconscionable and otherwise drafted to favor employers." We disagree that the multiplier in section 50-6-241(d)(1)(A) used in conjunction with the AMA Guides violates the THRA and the THA.

---

[10] The plaintiffs filed the affidavits of two medical experts who opined that there is no method used and accepted by the medical community to rate injuries not covered by the AMA Guides. We note, however, that the AMA Guides themselves indicate that in situations where impairment ratings are not provided, physicians are to use their clinical judgment based upon the physician's experience, training, and skill, in arriving at an impairment rating. See AMERICAN MEDICAL ASSOCIATION, GUIDES TO THE EVALUATION OF PERMANENT IMPAIRMENT, § 1.5 (Gunnar B.J. Andersson & Linda Cocchiarella, eds., 5th ed. 2000).

The purpose of the THRA is to:

(1) Provide for execution within Tennessee of the policies embodied in the federal Civil Rights Acts of 1964, 1968 and 1972, the Pregnancy Amendment of 1978, and the Age Discrimination in Employment Act of 1967, as amended;

(2) Assure that Tennessee has appropriate legislation prohibiting discrimination in employment, public accommodations and housing . . . .;

(3) Safeguard all individuals within the state from discrimination because of race, creed, color, religion, sex, age or national origin in connection with employment and public accommodations, and because of race, color, creed, religion, sex or national origin in connection with housing;

(4) Protect their interest in personal dignity and freedom from humiliation;

(5) Make available to the state their full productive capacity in employment;

(6) Secure the state against domestic strife and unrest that would menace its democratic institutions;

(7) Preserve the public safety, health and general welfare; and

(8) Further the interest, rights, opportunities and privileges of individuals within the state.

Tenn. Code Ann. § 4-21-101. The intent of the THRA is to provide for execution within Tennessee of the policies embodied in the federal civil rights statutes. Campbell v. Fla. Steel Corp., 919 S.W.2d 26, 31 (Tenn. 1996). Accordingly, an analysis of claims under the THRA is the same as under Title VII of the Federal Civil Rights Act. Id.

The THA, found in section 8-50-103, states in pertinent part:

There shall be no discrimination in the hiring, firing and other terms and conditions of employment of the state of Tennessee or any department, agency, institution or political subdivision of the state, or of any private employer, against any applicant for employment based solely upon any physical, mental or visual handicap of the applicant, unless such handicap to some degree prevents the applicant from performing the duties required by the employment sought or impairs the performance of the work involved.

Tenn. Code Ann. § 8-5-103(a).

Mindful of these statutes, we note that all employers whose employees suffer work-related injuries on or after July 1, 2004, whom the employer rehires at an equal or greater wage must pay a maximum permanent partial disability award of 1.5 times the employee's medical impairment rating as determined by the AMA Guides, unless the injury is not covered by the AMA Guides. If the injury is not covered by the AMA Guides, the impairment rating may be determined by any appropriate method used and accepted by the medical community. Tenn. Code Ann. § 50-6-204(d)(3)(A). Thus, section 50-6-241(d)(1)(A) results in similarly situated employees being treated the same, comporting with the principles of equity and fairness espoused by the civil rights laws.

Accordingly, we conclude that section 50-6-241(d)(1)(A) used in conjunction with the AMA Guides does not result in prohibited discrimination under the THRA or the THA.

## CONCLUSION

For the reasons stated above, we hold that the benefit review conference requirement embodied in Tennessee Code Annotated sections 50-6-203(a), -225(a)(1), and -239(b), does not violate the due process protections of the Tennessee or United States Constitutions, the separation of powers doctrine in article II, sections 1 and 2 of Tennessee's Constitution, or the open courts doctrine found in article I, section 17, of the Tennessee Constitution. Nor does the benefit review conference violate Supreme Court Rule 11(VII)(b) or Tennessee Code Annotated section 50-6-225. We also hold that the method used to determine permanent partial disability benefits, specifically the multiplier provisions of Tennessee Code Annotated section 50-6-241(d)(1)(A) and use of the AMA Guides to determine anatomical impairment, does not violate equal protection, due process, the THRA, or the THA. Accordingly, the judgment of the trial court is reversed in each case. These cases are remanded to the trial courts for further proceedings consistent with this opinion. Costs are taxed to the plaintiffs, David A. Lozano and Jerry Wayne Lynch, and their sureties, for which execution may issue if necessary.

_____
CORNELIA A. CLARK, JUSTICE

-15-