FILED

JUL 19 2024

Clerk of the Appellate Courts
Rec'd By

IN THE SUPREME COURT OF TENNESSEE
SPECIAL WORKERS' COMPENSATION APPEALS PANEL
AT NASHVILLE
February 12, 2024 Session

## ALBERT RANDALL WORRELL v. OBION COUNTY SCHOOL DISTRICT

**Appeal from the Workers' Compensation Appeals Board**
**Court of Workers' Compensation Claims**
**No. 2021-07-0284   Amber E. Luttrell, Judge**

---

**No. W2023-01082-SC-R3-WC– Mailed June 14, 2024**

---

Albert Randall Worrell injured his shoulder in the course and scope of his employment with Obion County School District. Mr. Worrell and Obion County entered into a settlement agreement. Among other things, the agreement required Obion County to pay for future medical expenses related to his work injury. Almost three years after his initial injury, Mr. Worrell's doctors recommended that he undergo shoulder replacement surgery. The Court of Workers' Compensation Claims concluded that Obion County was not required to pay for the shoulder replacement surgery because Mr. Worrell did not prove that the recommended surgery was causally related to his work injury. The Workers' Compensation Appeals Board affirmed. In his appeal to this Panel, Mr. Worrell presses federal and state constitutional challenges to two provisions of Tennessee's workers' compensation law—Tennessee Code Annotated section 50-6-116 (2014), which instructs courts to construe the workers' compensation law fairly and impartially, and Tennessee Code Annotated section 50-6-102(14) (Supp. 2016), which defines the term "injury." Mr. Worrell argues that both provisions violate the substantive due process protections of the United States and Tennessee Constitutions and the Open Courts Clause of the Tennessee Constitution. He further argues that the definition of "injury" violates the equal protection guarantees of the federal and state constitutions. We hold that the challenged statutory provisions are constitutional and affirm the judgment of the Workers' Compensation Appeals Board.

**Tenn. Code Ann. § 50-6-217(a)(2)(B) Appeal as of Right;**
**Decision of the Workers' Compensation Appeals Board Affirmed**

SARAH K. CAMPBELL, J., delivered the opinion of the court, in which ROBERT E. LEE DAVIES, SR. J. and D. KELLY THOMAS, JR., SR. J., joined.

Charles L. Holliday, Jackson, Tennessee, for the appellant, Albert Randall Worrell

Heather H. Douglas, Nashville, Tennessee, for the appellee, Obion County School District

Jonathan Skrmetti, Attorney General and Reporter; Andrée Blumstein, Solicitor General; and Mara Cunningham, Assistant Attorney General, Nashville, Tennessee, for the appellee, State of Tennessee

## OPINION

### Factual and Procedural Background

In October 2019, Albert Randall Worrell injured his left shoulder while moving bleachers for Obion County School District. Dr. David Pearce examined Mr. Worrell and determined that he had a rotator cuff tear. Dr. Pearce performed corrective surgery in December 2019. After several follow-up appointments, Dr. Pearce placed Mr. Worrell at maximum medical improvement.

In June 2021, Mr. Worrell and Obion County entered into a settlement agreement to resolve his claim for workers' compensation benefits. This agreement obligated Obion County to provide "reasonable and necessary, authorized future medical expenses that are directly related to the work injury under Tennessee Code Annotated Section 50-6-204." The Court of Workers' Compensation Claims approved this settlement agreement and entered a judgment incorporating its terms.

In June 2022, Mr. Worrell returned to Dr. Pearce after experiencing shoulder pain. Dr. Pearce referred Mr. Worrell to Dr. Adam Smith to discuss shoulder replacement surgery. Dr. Smith examined Mr. Worrell and determined that his rotator cuff was "extremely thin" and that he had "end-stage arthritis with loose bodies in each joint." Dr. Smith recommended that Mr. Worrell undergo shoulder replacement surgery.

The Medical Director of the Bureau of Workers' Compensation approved the recommended surgery on August 31, 2022. Obion County filed a petition for benefit determination in the Court of Workers' Compensation Claims to dispute whether Mr. Worrell's work-related injury caused the need for shoulder replacement surgery.

The court held a compensation hearing in February 2023. The only medical proof Mr. Worrell offered regarding causation was Dr. Pearce's deposition testimony. Dr. Pearce testified that his examination of Mr. Worrell following his initial work injury in 2019 revealed preexisting rotator cuff tears and arthritis. When asked for his opinion about the cause of Mr. Worrell's need for a total shoulder replacement, Dr. Pearce was unable to say whether the work injury and initial surgery were a greater than fifty percent cause. Dr. Pearce noted that Mr. Worrell had "severe underlying problems with his shoulder." But he

2

agreed with Mr. Worrell's counsel that there was "no medically accepted way to quantify [that] preexisting condition into a percentage."

The Court of Workers' Compensation Claims issued its compensation order on March 28, 2023. The court concluded that Mr. Worrell was not entitled to the shoulder replacement surgery under the future medical provision of his workers' compensation settlement because he failed to prove that his "work injury or first surgery contributed more than fifty percent in causing the need for his shoulder replacement surgery."

The Workers' Compensation Appeals Board affirmed. The Board agreed with the Court of Workers' Compensation Claims that Mr. Worrell had failed to sufficiently prove causation. Mr. Worrell argued that the statutory requirements concerning preexisting conditions discriminated against older employees, but the Board declined to address this argument. The Board explained that neither it nor the Court of Workers' Compensation Claims has authority to address a facial constitutional challenge to the workers' compensation statutes and noted that Mr. Worrell's argument was "more properly directed to Tennessee's General Assembly or, if appropriate, in a properly filed constitutional challenge."

Mr. Worrell appealed. He no longer challenges the determination of the Court of Workers' Compensation Claims that he failed to prove causation. Instead, he challenges the constitutionality of Tennessee Code Annotated section 50-6-116 and the definition of "injury" in section 50-6-102.

## Standard of Review

We review questions of constitutional interpretation de novo without any presumption of correctness. *Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 417 S.W.3d 393, 399 (Tenn. 2013). When the constitutionality of a statute is challenged, we must start with the presumption that the law is constitutional and "resolve every doubt in favor of the statute's constitutionality." *Gallaher v. Elam*, 104 S.W.3d 455, 459 (Tenn. 2003). Because we must presume a statute is constitutional, the party challenging a statute "bear[s] a heavy burden in establishing some constitutional infirmity of the Act in question." *West v. Tenn. Hous. Dev. Agency*, 512 S.W.2d 275, 279 (Tenn. 1974). A facial constitutional challenge is "the most difficult challenge to mount." *Lynch v. City of Jellico*, 205 S.W.3d 384, 390 (Tenn. 2006). To succeed on a facial challenge, the plaintiff "must establish that no set of circumstances exist under which the [law] would be valid." *Id.*

## Analysis

More than a decade ago, the General Assembly passed the Tennessee Workers' Compensation Reform Act of 2013, ch. 289, 2013 Tenn. Pub. Acts 767 (codified as amended in scattered sections of the Tennessee Code Annotated) ("Reform Act"). As

3

relevant to this appeal, the Reform Act eliminated the remedial construction requirement in Tennessee Code Annotated section 50-6-116 and amended the definition of "injury" in Tennessee Code Annotated section 50-6-102.

Before the Reform Act, section 50-6-116 provided that the workers' compensation chapter was "a remedial statute, which shall be given an equitable construction by the courts, to the end that the objects and purposes of this chapter may be realized and attained." Tenn. Code Ann. § 50-6-116 (2008 & Supp. 2013). The Reform Act eliminated this remedial construction requirement and replaced it with a neutral instruction. As amended, section 50-6-116 provides that "this chapter shall not be construed in a manner favoring either the employee or employer" but shall be "construed fairly, impartially, and in accordance with basic principles of statutory construction." Tenn. Code Ann. § 50-6-116 (2014).[1]

The Reform Act also amended the definition of "injury" in section 50-6-102 by adopting a more explicit causation standard. Before this amendment, the statute provided that a compensable injury "[m]ean[s] an injury by accident, arising out of and in the course of employment, that causes either disablement or death of the employee." Tenn. Code Ann. § 50-6-102(12)(A) (Supp. 2013). But it did not define the phrase "arising out of and in the course of employment."

As amended, the statute provides in relevant part that "injury" for purposes of the workers' compensation law means "an injury . . . arising primarily out of and in the course and scope of employment, that causes death, disablement or the need for medical treatment of the employee." Tenn. Code Ann. § 50-6-102(14) (Supp. 2016). The amended statute elaborates that "[a]n injury 'arises primarily out of and in the course and scope of employment' only if it has been shown by a preponderance of the evidence that the employment contributed more than fifty percent (50%) in causing the injury, considering all causes." Id. § 50-6-102(14)(B). The term injury "shall not include the aggravation of a preexisting disease, condition or ailment unless it can be shown to a reasonable degree of medical certainty that the aggravation arose primarily out of and in the course and scope of employment." Id. § 50-6-102(14)(A). Moreover, "[a]n injury causes death, disablement or the need for medical treatment only if it has been shown to a reasonable degree of medical certainty that it contributed more than fifty percent (50%) in causing the death, disablement or need for medical treatment, considering all causes." Id. § 50-6-102(14)(C). The phrase "'[s]hown to a reasonable degree of medical certainty' means that, in the opinion of the physician, it is more likely than not considering all causes, as opposed to speculation or possibility." Id. § 50-6-102(14)(D).

---

[1] Citations to the amended version of the workers' compensation law are to the version that was in effect at the time of Mr. Worrell's injury in October 2019. See Tenn. Code Ann. § 50-6-116 (2014); Tenn. Code Ann. § 50-6-102(14) (Supp. 2016). In the current version of the law, the definition of "injury" appears at Tennessee Code Annotated section 50-6-102(12) (2022).

4

Mr. Worrell raises three constitutional challenges in this appeal. First, he argues that section 50-6-116 and the definition of "injury" in section 50-6-102 violate his substantive due process rights under the United States and Tennessee Constitutions. Second, he argues that the definition of "injury" in section 50-6-102 violates the equal protection guarantees in the United States and Tennessee Constitutions. Third, he argues that both amended provisions violate the Open Courts Clause of the Tennessee Constitution. We address each argument in turn.

## I.    Substantive Due Process

The Due Process Clause of the Fourteenth Amendment prohibits a state from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Similarly, the "law of the land" provision in the Tennessee Constitution provides that "no man shall be taken or imprisoned, or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or in any manner destroyed or deprived of his life, liberty or property, but by the judgment of his peers or the law of the land." Tenn. Const. art. I, § 8. This "law of the land" provision has "consistently been interpreted as conferring identical due process protections" as the Fourteenth Amendment. *Mansell*, 417 S.W.3d at 407; *see also Burford v. State*, 845 S.W.2d 204, 207 (Tenn. 1992).

The doctrine of substantive due process "bars certain arbitrary, wrongful government actions 'regardless of the fairness of the procedures used to implement them.'" *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)). The doctrine imposes limits on both legislative and executive action. *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). But the "criteria to identify what is fatally arbitrary differ depending on whether it is legislation or a specific act of a governmental officer that is at issue." *Id.*; *see also Parks Props. v. Maury Cnty.*, 70 S.W.3d 735, 744 (Tenn. Ct. App. 2001) (Koch, J.).

When, as here, legislation is at issue, the standard used to evaluate the challenged law depends on whether it implicates a fundamental right. *See Gallaher*, 104 S.W.3d at 463. If no fundamental right is implicated, rational basis review applies. *Id.*; *Riggs v. Burson*, 941 S.W.2d 44, 51 (Tenn. 1997). But if the challenged legislation infringes a fundamental right, the court must apply strict scrutiny. *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997).

Mr. Worrell does not argue that the challenged provisions implicate a fundamental right.[2] Consequently, his substantive due process challenge to those provisions warrants only rational basis review. A statutory provision survives rational basis review if it "bears

---

[2] The Tennessee Supreme Court has explained that, "[w]hile workers' compensation benefits, as property rights, are protected by article I, section 8 of the Tennessee Constitution, they are not fundamental rights." *Mansell*, 417 S.W.3d at 409.

5

'a reasonable relation to a proper legislative purpose' and is 'neither arbitrary nor discriminatory.'" *Gallaher*, 104 S.W.3d at 463 (quoting *Riggs*, 941 S.W.2d at 51). This standard is met if "any reasonably conceivable state of facts could provide a rational basis" for the provision. *Fisher v. Hargett*, 604 S.W.3d 381, 399 (Tenn. 2020). Put another way, a statute does not violate substantive due process "so long as some 'plausible' reason exists for the law—any plausible reason, even one that did not inspire the enacting legislators." *Tiwari v. Friedlander*, 26 F.4th 355, 361 (6th Cir. 2022) (citing *Heller v. Doe*, 509 U.S. 312, 320, 324, 330 (1993); *Nordlinger v. Hahn*, 505 U.S. 1, 11, 17–18 (1992)).

Section 50-6-116 easily survives rational basis review. As explained above, this provision eliminated the remedial construction requirement and replaced it with a neutral instruction. It is not difficult to identify a rational purpose for this provision: the neutral instruction requirement promotes the predictable interpretation of the workers' compensation statutes and ensures that employees and employers are treated equally. This purpose reflects a legitimate government interest. *See Brown v. Campbell Cnty. Bd. of Educ.*, 915 S.W.2d 407, 415–16 (Tenn. 1995) (noting that "uniformity, fairness and predictability" are "legitimate state interests"). Moreover, section 50-6-116 is reasonably related to this purpose. The plain language of the provision obligates courts to interpret the workers' compensation law "fairly, impartially, and in accordance with basic principles of statutory construction." Tenn. Code Ann. § 50-6-116. Nor is section 50-6-116 arbitrary or discriminatory. To the contrary, it cautions courts that the workers' compensation statutes "shall not be construed in a manner favoring either the employee or employer." *Id.*

The amended definition of "injury" in section 50-6-102 also clears the rational basis hurdle. Under this definition, an "injury" for purposes of the workers' compensation statutes "arises primarily out of and in the course and scope of employment" only if "it has been shown by a preponderance of the evidence that the employment contributed more than fifty percent (50%) in causing the injury, considering all causes." Tenn. Code Ann. § 50-6-102(14)(B). When the injury at issue is an aggravated preexisting condition, the employee must show "to a reasonable degree of medical certainty that the aggravation arose primarily out of and in the course and scope of employment." *Id.* § 50-6-102(14)(A). One possible purpose of the amended definition is to reduce workers' compensation insurance premiums for employers, which is a legitimate government interest. *Brown*, 915 S.W.2d at 415. Section 50-6-102 is reasonably related to this purpose because it is conceivable that requiring proof of causation will reduce costs for insurers and thereby lower employer premiums. And this provision is neither arbitrary nor discriminatory because the causation requirement applies equally to all employees.

Mr. Worrell argues that the challenged provisions violate substantive due process because they are conscience shocking, in the constitutional sense. The shocks-the-conscience standard generally applies only when *executive* action is challenged. *See, e.g., Abdur'Rahman v. Bredesen*, 181 S.W.3d 292, 309 (Tenn. 2005) ("Substantive due process . . . is implicated where an *executive agency of government* acts in a manner that is . . . so

6

egregious that it shocks the conscience." (emphasis added)); *Lewis*, 523 U.S. at 846 ("[F]or half a century now, we have spoken of the cognizable level of *executive abuse of power* as that which shocks the conscience." (emphasis added)). The Tennessee Supreme Court, however, has at times applied this standard when evaluating substantive due process challenges to legislation, including provisions of the workers' compensation statutes. *See, e.g., Mansell*, 417 S.W.3d at 409–10; *Lynch*, 205 S.W.3d at 391–92.

To the extent the shocks-the-conscience standard applies in this context, Mr. Worrell has failed to establish that the challenged provisions are "conscience shocking, in the constitutional sense." *Mansell*, 417 S.W.3d at 409 (quoting *Lynch*, 205 S.W.3d at 392). "[O]nly the most egregious official conduct" will violate that standard. *Lewis*, 523 U.S. at 845. As one example, the United States Supreme Court held that forcibly pumping a criminal suspect's stomach to obtain evidence "shock[ed] the conscience" where the force used was "so brutal and so offensive to human dignity" that it violated the "decencies of civilized conduct." *Rochin v. California*, 342 U.S. 165, 172–74 (1952).

Mr. Worrell argues that "the elimination of the remedial construction [requirement] is constitutionally conscience shocking because it destroys the quid pro quo and the bargain struck more than 100 years ago in return for giving up the right to sue in tort." But section 50-6-116 merely requires courts to construe the workers' compensation statutes fairly and impartially. Employees who are entitled to benefits under a fair interpretation of the law will still receive them. As the Tennessee Supreme Court has repeatedly held, the legislature has the prerogative "to establish the policies and procedures necessary to administer workers' compensation claims." *Mansell*, 417 S.W.3d at 410; *see also Martin v. Lear Corp.*, 90 S.W.3d 626, 632 (Tenn. 2002) ("[T]he Legislature is the appropriate body to set the policy that governs workers' compensation cases."). The legislature validly exercised that prerogative when it amended section 50-6-116.

Mr. Worrell argues that the amended definition of "injury" is conscience shocking because it effectively makes it impossible for workers with preexisting injuries to recover benefits. To support that argument, he points to Dr. Pearce's testimony that there was no medically accepted way to quantify to what extent Mr. Worrell's work-related injury—as opposed to his preexisting condition—caused his need for shoulder replacement surgery. The principal problem with this argument is that Dr. Pearce's testimony concerned the difficulty of proving causation *in this case*. As the State points out, in other cases courts have awarded workers' compensation benefits under the amended definition to employees whose work-related injuries aggravated their preexisting injuries. *See, e.g., Joiner v. United Parcel Serv., Inc.*, No. M2018-01876-SC-R3-WC, 2019 WL 6652096, at *6 (Tenn. Workers' Comp. Panel Dec. 6, 2019); *Miller v. Lowe's Home Ctrs., Inc.*, No. 2015-05-0158, 2015 WL 6446638, at *7 (Tenn. Workers' Comp. App. Bd. Oct. 21, 2015). Even if Mr. Worrell were right that a complete denial of workers' compensation benefits for the aggravation of preexisting injuries would be conscience shocking, in a constitutional sense, Mr. Worrell has not established that a complete denial occurred here. At most, he has

shown that the amended definition prevented him from proving causation in this case. That is not enough to succeed on a facial constitutional challenge.

Mr. Worrell also complains that the amended definition of injury makes it more difficult to obtain workers' compensation benefits than to recover in tort. As an initial matter, it is not clear that the causation standards that apply in the two contexts are appreciably different. A plaintiff bringing a negligence claim must prove by a preponderance of the evidence that the defendant's conduct was both the cause in fact and the proximate cause of the plaintiff's injury. *See, e.g., King v. Anderson Cnty.*, 419 S.W.3d 232, 246 (Tenn. 2013). As the State points out, moreover, a negligence plaintiff must show not only that the defendant's conduct caused the injury, but also that the defendant's conduct fell below the applicable standard of care. *Id.* In that respect, it is arguably more difficult to recover in tort than to recover under the workers' compensation law. In any event, Mr. Worrell provides no authority to support his view that setting a higher bar for workers' compensation claimants than for tort plaintiffs is so arbitrary or egregious that it violates substantive due process protections.

In sum, Mr. Worrell has not carried his burden of proving that the challenged provisions lack a rational basis or shock the conscience. We therefore reject Mr. Worrell's substantive due process challenges to section 50-6-116 and the definition of "injury" in section 50-6-102.

## II.     Equal Protection

Both the United States and Tennessee Constitutions guarantee the equal protection of the laws. *Hughes v. Tenn. Bd. of Prob. and Parole*, 514 S.W.3d 707, 715 (Tenn. 2017). The federal guarantee appears in the Equal Protection Clause of the Fourteenth Amendment, while the state guarantee stems from Article I, Section 8 and Article XI, Section 8 of the Tennessee Constitution. *Id.* The Tennessee Supreme Court has explained that the federal and state guarantees "confer essentially the same protection." *Tenn. Small Sch. Sys. v. McWherter*, 851 S.W.2d 139, 152 (Tenn. 1993). Accordingly, Tennessee courts follow "the framework developed by the United States Supreme Court when analyzing equal protection claims." *McClay v. Airport Mgmt. Servs., LLC*, 596 S.W.3d 686, 695 (Tenn. 2020).

The equal protection guarantees of our federal and state constitutions require that "all persons similarly circumstanced shall be treated alike." *Dotson v. State*, 673 S.W.3d 204, 219 (Tenn. 2023) (quoting *State v. Robinson*, 29 S.W.3d 476, 480 (Tenn. 2000)). As a general matter, "laws that apply evenhandedly to all 'unquestionably comply' with the Equal Protection Clause." *Vacco v. Quill*, 521 U.S. 793, 800 (1997) (quoting *N.Y.C. Transit Auth. v. Beazer*, 440 U.S. 568, 587 (1979)). Laws that are discriminatory warrant additional scrutiny. The level of scrutiny to be applied depends on whether the law interferes with a fundamental right or discriminates against a suspect class. *Riggs*, 941 S.W.2d at 52–53.

When the challenged law does neither of these things, rational basis review applies. *Id.* at 53. A facially neutral law may violate equal protection if it has a discriminatory effect and was adopted with discriminatory intent. *See, e.g., Washington v. Davis*, 426 U.S. 229, 240–42 (1976); *McClay*, 596 S.W.3d at 695.

Mr. Worrell argues that the amended definition of "injury" in Tennessee Code Annotated section 50-6-102 "has created a distinction between workers who have preexisting asymptomatic degenerative conditions and those who do not." It is unclear whether Mr. Worrell is arguing that the definition is facially discriminatory or rather that it has a discriminatory impact. Either way, his equal protection challenge fails.

The challenged definition is not facially discriminatory because it establishes a single causation standard for all employees and all injuries, whether preexisting or not. An employee must prove by a preponderance of the evidence that his or her employment was a greater than fifty percent cause of the injury or the aggravation of a preexisting injury. Tenn. Code Ann. § 50-6-102(14)(A), (B).

Mr. Worrell suggests that the challenged definition disproportionately burdens employees with preexisting conditions—whom he claims are mostly older—by making it more difficult for them to prove causation. But even if he were right that the definition is discriminatory in effect, he still cannot prevail on his equal protection challenge because he has failed to present any evidence that the General Assembly enacted the Reform Act for the purpose of discriminating against employees with preexisting asymptomatic degenerative conditions. *See Washington*, 426 U.S. at 242; *McClay*, 596 S.W.3d at 695.

Moreover, even if Mr. Worrell could show that the amended definition discriminates against those with preexisting conditions, his equal protection challenge would trigger only rational basis review because the statute neither implicates a fundamental right nor involves a suspect class.[3] The definition survives rational basis review for the reasons explained above. We therefore hold that the amended definition of "injury" in Tennessee Code Annotated section 50-6-102 does not violate the equal protection guarantees of the United States or Tennessee Constitutions.

## III. Open Courts Clause

The Open Courts Clause of the Tennessee Constitution provides that "all courts shall be open; and every man, for an injury done him in his lands, goods, person or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial, or delay." Tenn. Const. art. I, § 17. In *Scott v. Nashville Bridge Co.*,

---

[3] Mr. Worrell points out that older workers are more likely to have preexisting degenerative conditions and suggests that the amended definition of "injury" therefore discriminates on the basis of age. But age is not a suspect classification. Rather, age-based classifications need only satisfy rational basis review. *Gregory v. Ashcroft*, 501 U.S. 452, 470 (1991).

the Tennessee Supreme Court explained that this provision "is a mandate to the judiciary and was not intended as a limitation of the legislative branch of government." 223 S.W. 844, 852 (Tenn. 1920). Consequently, Tennessee courts have held that plaintiffs may not assert Open Courts Clause claims against the legislature. *See, e.g., Harmon v. Angus R. Jessup Assocs., Inc.*, 619 S.W.2d 522, 524 (Tenn. 1981); *Harrison v. Schrader*, 569 S.W.2d 822, 827 (Tenn. 1978). Our Court of Appeals has relied on this case law to hold that the Open Courts Clause "does not limit a legislature's power to define what is and is not an 'injury.'" *Smith v. Pratt*, No. M2008-01540-COA-R9-CV, 2009 WL 1086953, at *5 (Tenn. Ct. App. Apr. 22, 2009) (quoting David Schuman, *The Right to a Remedy*, 65 Temp. L. Rev. 1197, 1206 (1992)).

Mr. Worrell contends that Tennessee Code Annotated section 50-6-116 and the amended definition of "injury" in section 50-6-102 violate the Open Courts Clause of the Tennessee Constitution because they deny him a "reasonable remedy" for his injury. Mr. Worrell acknowledges that *Scott* presents an insurmountable barrier to this claim, so he urges this Panel to overrule that decision and adopt a broader interpretation of the Open Courts Clause. But this Panel does not have authority to overrule a decision of the Tennessee Supreme Court. *See, e.g., Mayes v. Peebles, Inc.*, No. E2009-02030-WC-R3-WC, 2010 WL 3323742, at *3 (Tenn. Workers' Comp. Panel Aug. 23, 2010) ("Employer contends that *Kilgore* was wrongly decided, requests that it be reviewed and overruled, which is outside the authority of this panel."); *Day v. Zurich Am. Ins.*, No. W2009-01349-WC-R3-WC, 2010 WL 1241779, at *3 (Tenn. Workers' Comp. Panel Mar. 31, 2010). To the contrary, we are bound by Tennessee Supreme Court precedent and must faithfully apply it. *See Cook v. General Motors Corp.*, No. M2010-00272-WC-R3-WC, 2011 WL 590456, at *5 (Tenn. Workers' Comp. Panel Feb. 16, 2011) ("[A] panel is obligated to follow established precedent.").

*Scott* forecloses Mr. Worrell's argument that the challenged provisions violate the Open Courts Clause by limiting his remedy. Consequently, we reject his constitutional challenge and hold that the challenged provisions do not violate the Open Courts Clause.

### Conclusion

For the foregoing reasons, we affirm the judgment of the Workers' Compensation Appeals Board. The costs of this appeal are taxed to Albert Randall Worrell, for which execution may issue if necessary.

SARAH K. CAMPBELL, JUSTICE

10

IN THE SUPREME COURT OF TENNESSEE
AT JACKSON

## ALBERT RANDALL WORRELL v. OBION COUNTY SCHOOL DISTRICT

### Appeal from the Workers' Compensation Appeals Board
### No. 2021-07-0284

---

### No. W2023-01082-SC-WCM-WC

---

### JUDGMENT ORDER

This case is before the Court upon the motion for review filed by Albert Randall Worrell pursuant to Tennessee Code Annotated section 50-6-225(a)(5)(A)(ii), the entire record, including the order of referral to the Special Workers' Compensation Appeals Panel, and the Panel's Opinion setting forth its findings of fact and conclusions of law.

It appears to the Court that the motion for review is not well taken and is, therefore, denied. The Panel's findings of fact and conclusions of law, which are incorporated by reference, are adopted and affirmed. The decision of the Panel is made the judgment of the Court.

Albert Randall Worrell's motion to consolidate this case with *Wigdor v. Electric Research & Manufacturing Cooperative, Inc.*, No. W2023-01733-SC-R3-WC, is denied as moot.

Costs are assessed to Albert Randall Worrell, for which execution may issue if necessary.

It is so ORDERED.

PER CURIAM

SARAH K. CAMPBELL, J., not participating