IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
June 20, 2018 Session

## STATE OF TENNESSEE v. RYAN PATRICK BROADRICK

**Appeal from the Criminal Court for Davidson County**
**No. 2016-C-1897      Mark J. Fishburn, Judge**

_____

**No. M2017-01136-CCA-R3-CD**

_____

The Defendant, Ryan Patrick Broadrick, pled guilty to statutory rape, a Class E felony, in exchange for a three-year sentence on probation. Following a hearing, the trial court ordered that the Defendant was required to register as a sex offender. The Defendant appeals, arguing (1) that this court should review the trial court's decision using a de novo standard of review, rather than an abuse of discretion with a presumption of reasonableness standard; (2) that the trial court was not authorized by Tennessee Code Annotated section 39-13-506(d)(2)(B) to consider anything other than the facts and circumstances of the statutory rape offense to which the Defendant pled guilty; (3) that due process principles prohibited the trial court from considering the nolled sexual exploitation of a minor count of the indictment that pertained to photographs found on the Defendant's phone; (4) that due process of law afforded him the right to perform independent forensic testing of the photographs found on his phone; (5) that the trial court failed to articulate for the record how it took into account "the facts and circumstances of the offense" as required by the statute; and (6) that the photographs relied upon by the trial court did not depict minors engaged in sexual activity. After review, we affirm the judgments of the trial court. However, we remand the case for entry of judgment forms for each count of the indictment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court**
**Affirmed; Case Remanded**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and TIMOTHY L. EASTER, JJ., joined.

Dawn Deaner, District Public Defender; Emma Rae Tennent and Melissa Bourne (on appeal); and Jared Mollenkof (at hearing), Assistant District Public Defenders, for the appellant, Ryan Patrick Broadrick.

Herbert H. Slatery III, Attorney General and Reporter; M. Todd Ridley, Assistant Attorney General; Glenn R. Funk, District Attorney General; and Chad Butler and Alyssa Henning, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**
FACTUAL BACKGROUND

On November 7, 2014, a Davidson County grand jury returned an indictment against the Defendant charging him with solicitation of a minor in Count 1 and sexual exploitation of a minor in Count 2. See Tenn. Code Ann. §§ 39-13-528, -17-1003. Count 1 alleged that the thirty-nine-year-old Defendant, on December 5, 2013, "did by means of oral, written or electronic communication, electronic mail or internet services, directly or through another, intentionally command, request, hire, persuade, invite or attempt to induce" the seventeen-year-old victim, E.B.,[1] "a person [the Defendant] knew or should have known was less than eighteen (18) years of age, to engage in conduct that, if completed, would constitute . . . the offense of [a]ggravated [s]tatutory [r]ape . . . ." Count 2 claimed that the Defendant, on December 11, 2013, "did knowingly possess material that included a minor engaged in sexual activity or simulated sexual activity that is patently offensive where the number of individual images is less than fifty (50) . . . ." Count 2 related to images that were recovered from the Defendant's cell phone after he was interviewed at the Goodlettsville Police Department in relation to Count 1. The trial court subsequently granted the Defendant's motion to sever the charges.

Relevant to the solicitation charge, the State filed a notice of intent to use the Defendant's internet history from his phone at trial, which included visits to multiple websites advertising pornography of teenage girls (e.g., innocentcute.com, getmoreteens.com, nakedyounggirl.com, teensexhg.com, and underwearteenies.com). The Defendant then filed a motion "to exclude the admission of any and all images the State recovered from [the Defendant's] phone that the State [was] not alleging [were] depictions of children involved in sexual activity or lewdly displaying their genitalia" and "of all other browsing history, search queries and other irrelevant information recovered from the phone."

The Defendant also filed a motion to compel requesting that the State be required to provide the defense with electronic copies of the images "in order to adequately prepare [a] defense" and "to effectively cross-examine the State's witnesses." According to the motion, "[t]he defense intend[ed] to run reverse image searches for the purpose of determining where else these images exist[ed] on the internet" in an effort "to attempt to learn the identity of the models involved." A hearing was held on August 10, 2016,

---

[1] It is the policy of this court to protect the identity of minors who were the victims of sex crimes.

during which the trial court considered both the Defendant's motion to compel and the motion to exclude.

At the hearing, the State called Metro Nashville Police Detective Chad Gish, and he was qualified as an expert in device forensic analysis. Detective Gish discussed the cell phone extraction performed on the Defendant's phone, including recovery of the Defendant's internet history, bookmarks, and saved images. Detective Gish opined that the Defendant "was definitely looking for young girls, sex and child pornography."

Detective Gish testified regarding reverse image searches. He explained that such searches required uploading the photograph into a program, which would use facial and picture recognition to identify the victim. According to Detective Gish, uploading a "potential child pornography image to the Internet" to perform such a search would be a crime. According to Detective Gish, suspected child pornography images were sent to the National Center for Missing and Exploited Children ("NCMEC"), and NCMEC, in an effort to determine the age and identity of the individual, would run any provided photographs against every known victim in NCMEC database. Metro Nashville Police Detective Michael Adkins also testified about the process of reverse image searches, as well as the only legal method of identifying known victims of child pornography through the NCMEC database.

While the State had permitted the defense to inspect the photographs, the State refused to provide the defense with electronic copies for reverse image searching, opining that to do so would be illegal. The trial court asked defense counsel to "come back" when he knew "exactly how [the reverse image search was] going to be done and under what circumstances, and [by] whom." Defense counsel agreed. The trial court took both motions under advisement.

On September 14, 2016, the trial court entered an order granting the motion to exclude because the Defendant conceded knowingly possessing the photographs of nude minors. The State thereafter obtained a superseding indictment, which, in addition to the two original charges, added two counts of trafficking E.B. for a commercial sex act. See Tenn. Code Ann. § 39-13-309. The State also filed a motion for the trial court to reconsider its ruling excluding the Defendant's internet history. Shortly thereafter, the State "entered a nolle prosequi" on Count 2. It appears from the record that a hearing was held on October 26, 2016,[2] during which the trial court considered the State's motion to reconsider and heard additional evidence on the Defendant's motion to compel. Both motions were taken under advisement.

---

[2] We glean this information from a minute entry in the technical record. A transcript of this hearing is not included in the appellate record.

Before the trial court ruled on the Defendant's motion to compel, the Defendant entered into a best interest plea in Count 1 to statutory rape,[3] a Class E felony. See Tenn. Code Ann. § 39-13-506. In exchange for his plea, he received a Range I sentence of three years supervised probation,[4] and Counts 3 and 4 were dismissed. At the guilty plea hearing, the State summarized the facts surrounding Count 1 as follows:

> Your Honor, . . . had this case gone to trial, the State's proof would have shown that the victim in this case . . . received a text message from the [D]efendant . . . on or about December 6th,[5] 2013, in which the [D]efendant stated, "Okay, I know this is probably going to freak you out, but hope not, how would you like to make a quick $150? I can't believe I'm asking you this, but that security guard and me wanted to know if you would give him a blow job and let me do doggy style, either the same time or just one at a time? I can't believe I'm asking you this because you're a very sweet and kind girl, but I could just tell by talking to you that you're very promiscuous, right?
>
> The victim responded[,] "No," and sent no further text messages to the [D]efendant.
>
> The [D]efendant was interviewed by the Goodlettsville Police Department and admitted that he had written the text messages, stated that he had not meant to send them and that it went too far, but did acknowledge that he had sent them.

The issue of whether the Defendant was to be placed on the sex offender registry was reserved for the trial court.

---

[3] In the case of a guilty plea entered on a charge not contained in the original indictment, this court has held, "An indictment may be amended in all cases with the consent of the [defendant]. For tactical reasons, a person may choose to plead guilty to an offense that is not charged in the indictment and is not a lesser-included offense of the indicted offense." Roy Allen Scott v. David Osborne, Warden, No. E2011-02021-CCA-R3-HC, 2012 WL 1523824, at *3 (Tenn. Crim. App. Apr. 30, 2012) (citing Tenn. R.Crim. P. 7(b); State v. L.W., 350 S.W.3d 911, 917 (Tenn. 2011)). Moreover, this court concluded that a defendant's guilty plea to an offense that is not a lesser-included offense of the indicted charge is "in effect, his consent to an amendment to the indictment." Id. (citation omitted); see also State v. Yoreck, 133 S.W.3d 606, 612-14 (Tenn. 2004).

[4] The plea called for an out-of-range sentence pursuant to Hicks v. State, 945 S.W.2d 706, 709 (Tenn. 1997).

[5] The indictment charged December 5th.

A hearing was held on April 26, 2017. The presentence report, admitted into evidence, outlined the facts surrounding both Counts 1 and 2.

Relative to Count 1, the presentence report reflected that the victim and the Defendant had worked together at "ABC toys" for two weeks. The victim told police that, in addition to the Defendant's sending her the text message, "the Defendant ha[d] talked to her about his ex-wife's sex parties." She also maintained that she never gave the Defendant her phone number. After being advised of his <u>Miranda</u> warnings, the Defendant initially denied sending the text message to the victim and claimed that his phone had been "unlocked" while "he was at his friend's motel room" drinking. Later in the interview, the Defendant admitted to sending the text message. He claimed that he spoke with the victim and the security guard at the mall, and when the victim walked away, the security guard said that "he'd love to 'tear that little ass up.'" The Defendant then "start[ed] talking about how he had a [sixteen]-year-old son, so he [saw] his son's female friends all the time." According to the Defendant, the security guard asked the Defendant "to see what he could do as far as getting [the security guard] together with the victim." The Defendant said that he wrote the text message but claimed that it was sent accidentally. However, the Defendant went as far as to say that he and the security guard were planning to "commission" the victim and that the security guard was supposed to put up the money. The Defendant said he wanted to "whatever" with the victim and "whoever, whether it be [him] or somebody else, was gonna do her from behind."

As for Count 2, near the end of the interview, the detective asked the Defendant if he had any "naked pictures" on his cell phone. The Defendant, at first, said he only had pictures of himself and his fiancée, as well as "random adult pornography he had gotten from the internet." The Defendant then said, "Well, okay, okay," and explained that he had pictures that were "nudism voyeur" and "beach pictures of families[,] including small children[,]" on the phone. A warrant was obtained for the Defendant's phone, and the subsequent search "revealed [thirty]-[forty] images of minor females engaged in sexual activity or simulated sexual activity." According to the report, "at least [ten]-[fourteen] images [were] of younger (prepubescent) children"; "the Defendant's internet bookmarks included several websites that indicate[d] child pornography"; and "the Defendant's web history also indicate[d] the Defendant was visiting similar sites[.]"

After the presentence report was admitted into evidence, argument from the parties ensued. Defense counsel acknowledged that the Defendant had pled guilty "to facts amounting to solicitation of a minor"; however, defense counsel argued that the trial court should not consider any of the other charges in the indictment. In support of his argument that the trial court should not consider the facts surrounding Count 2, defense counsel noted that Count 2 had been severed prior to the Defendant's guilty plea, that Count 2 "was dismissed[,]" and that the "claims" in Count 2 had "in no way been

-5-

proven[.]" The prosecutor replied that the trial court could "take into consideration other criminal activity, whether it's charged or not, whether there's a conviction or not[.]" The prosecutor remarked that the trial court had heard testimony from two detectives "about the contents that were found in [the Defendant's] phone."[6]

The trial court said that it was "going to consider any and all the facts arising out of the indictment," reasoning, "[I]t could be a [fifty]-count indictment, you only plead to one, but you still have the right to look at the other [forty-nine], the overall circumstances." Defense counsel responded, "Judge well then I think that our other argument is that these images should then be admitted as the best evidence of the allegations[.]"

Although the trial court did agree to continue the hearing to comply with the defense's request to have the photographs admitted into evidence, argument continued. The prosecutor discussed the circumstances of the offense to which the Defendant pled guilty, the original charges against the Defendant, the images found on the Defendant's phone, and his internet history. The prosecutor argued that the Defendant's intent to collect child pornography was clear. Defense counsel replied that the images were "not what anyone would traditionally think of as child pornography" and maintained that the case "was grossly overcharged in a superseding indictment" to ensure a plea.

At one point, defense counsel stated that the Defendant's actions underlying his guilty plea were not "[t]he sort of thing that the sex offender registry was created for." The trial court interjected, noting that the facts underlying the Defendant's plea supported the greater charge of solicitation of a minor, which was an offense that required mandatory registration as a sex offender. The trial court continued, "[T]he statute on the statutory rape specifically says to consider the facts and circumstances of the indictment, not what he pled to. . . . [T]he State has clearly got a legitimate argument that the facts support [placement on the registry] because it's really solicitation of a minor." Defense counsel then stated, "We agreed to the sentencing hearing because we believed Your Honor should have discretion about this determination" of whether to place the Defendant on the registry. Defense counsel also noted the Defendant's behavior since he had been released on bond three and half years ago, stating, "[N]othing about [the Defendant's] behavior has given any indication in that time that he is any sort of ongoing threat." The trial court observed that the Defendant was initially "coy" with the police when he gave his statement about possessing the images on his phone and that the Defendant indicated during the interview that he was aware of the victim's age. The prosecutor also noted that the Defendant "went as far as to tell detectives that he and the other security guard were planning to commission the victim and that the security guard

---

[6] This appears to be a reference to testimony given at the August 10, 2016 hearing.

-6-

was supposed to put up the money, [the D]efendant said he wanted to do whatever with her and whoever, whether it be with him or somebody else[.]"

After the hearing concluded, the State filed five images obtained from the Defendant's phone under seal. Two of the photographs depicted groups of naked, prepubescent girls. The other three showed postpubescent young females with fully exposed genitalia, one bearing the watermark "CumaholicTeens.com."

Thereafter, the trial court placed its ruling on the record on May 3, 2017. The trial court first explained, "I have given consideration to the underlying facts in this case, which the statute mandates that I do." The trial court continued,

> I have also reviewed the photographs . . . that were retrieved from [the Defendant's] phone. Despite the suggestions that these were family photos or some innocent photos taken at a nudist camp, the [c]ourt finds that that's not even close. Those photos were . . . absolutely sexually oriented, could have easily and would have, in the [c]ourt's mind, resulted in a conviction for a much greater offense than that to which he is pleading. The [c]ourt can think of no reason whatsoever, that's just beyond the [c]ourt's [comprehension] that there's a reasonable and rational explanation for that, . . . possession of those type of photographs. The [c]ourt feels that they are certainly suggestive of someone who has interests in minor children.

The trial court concluded that the Defendant was required to comply with the sex offender registry requirements.

The Defendant then filed a motion for the trial court to reconsider its decision. The Defendant argued that the child pornography charge was "merely an allegation" in an unrelated case. He again noted that Count 2 had been severed from Count 1 prior to entry of his guilty plea. He surmised that the trial court erred in considering Count 2 in rending its decision. No disposition of this motion is apparent from the record.

The Defendant now appeals the trial court's decision to require him to register as a sex offender. The case is properly before us for our review.

ANALYSIS

On appeal, the Defendant argues that the trial court erred by ordering him to register on the Tennessee Sex Offender Registry. Specifically, the Defendant submits (1) that this court should review the trial court's decision using a de novo standard of review, rather than an abuse of discretion with a presumption of reasonableness standard; (2) that the trial court was not authorized by Tennessee Code Annotated section 39-13-

506(d)(2)(B) to consider anything other than the facts and circumstances of the statutory rape offense to which the Defendant pled guilty; (3) that due process principles prohibited the trial court from considering the nolled sexual exploitation of a minor count of the indictment that pertained to photographs found on the Defendant's phone; (4) that due process of law afforded him the right to perform independent forensic testing of the photographs found on his phone; (5) that the trial court failed to articulate for the record how it took into account "the facts and circumstances of the offense" as required by section 39-13-506(d)(2)(B); and (6) that the photographs relied upon by the trial court did not depict minors engaged in sexual activity. The State disagrees.

As stated above, the Defendant pled guilty to one count of statutory rape, a Class E felony. See Tenn. Code Ann. § 39-13-506(d)(2)(A). Tennessee Code Annotated section 39-13-506(d)(2)(B) provides as follows:

> In addition to the punishment provided for a person who commits statutory rape for the first time, the trial judge may order, after taking into account the facts and circumstances surrounding the offense, including the offense for which the person was originally charged and whether the conviction was the result of a plea bargain agreement, that the person be required to register as a sexual offender pursuant to title 40, chapter 39, part 2.

We will address each of the Defendant's issues in turn.

I. *Standard of Review*

The Defendant first argues that this court should utilize a de novo standard to review the trial court's decision ordering him to register as a sex offender, rather than the abuse of discretion with a presumption of reasonableness standard enunciated in State v. Bise, 380 S.W.3d 682, 707 (Tenn. 2012) (adopting "an abuse of discretion standard of review, granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act"). Relying on Ward v. State, 315 S.W.3d 461, 472 (Tenn. 2010), the defendant asserts that sex offender registration is a collateral consequence of his plea and not a material part of his sentence. Moreover, the Defendant notes that the Sentencing Act is found in title 40, chapter 35 of the Tennessee Code, while the Tennessee Sexual Offender and Violent Sexual Offender Registration, Verification, and Tracking Act is found in title 40, chapter 39, part 2. Accordingly, he asserts that de novo review is the appropriate standard for reviewing his placement on the sex offender registry as "[t]here is no reason for this [c]ourt to follow the standard of review established by Bise for a legal issue with no connection to the Sentencing Act."

However, in State v. Cody Lee Crawford, No. E2014-01868-CCA-R3-CD, 2015 WL 3610551, at *3 (Tenn. Crim. App. June 10, 2015), a panel of this court was faced with a similar factual scenario and a defendant's challenge to placement on the sex offender registry. The panel stated that the "[d]efendant's complaint about the requirement that he become a registered sex offender is essentially a challenge to his sentence." Id. The panel further stated that, "[w]hen a defendant challenges the length, range, or manner of service of a sentence, this [c]ourt reviews the trial court's sentencing decision under an abuse of discretion standard with a presumption of reasonableness." Id. (citing State v. Caudle, 388 S.W.3d 273, 278-79 (Tenn. 2012); Bise, 380 S.W.3d at 708)). The panel also cited the relevant statute, Tennessee Code Annotated section 39-13-506(d)(2)(B), and determined that the trial court had the discretionary authority to order the defendant to register as a sex offender. Id. at *3-4.

The Defendant states that this court has not yet "ruled on the standard of review governing a trial court's ordering a defendant to register as a sex offender." In an attempt to distinguish Crawford, the Defendant notes that the panel "was not asked to rule on the standard of review" because the defendant there only argued that the trial court abused its discretion. Regardless, the Defendant asserts that the reasoning of Crawford is flawed because "placement on the sex offender registry is not a sentence[,]" and he relies on the Tennessee Supreme Court's decision in Ward, and this court's decision in State v. Stephanie Lynn Bickford, No. M2015-00628-CCA-R3-CD, 2016 WL 1159199 (Tenn. Crim. App. Mar. 23, 2016), in support.

In Bickford, the defendant specifically argued that this court, on appeal, "should utilize a de novo with a presumption of correctness standard of review, rather than the abuse of discretion with a presumption of reasonableness standard[.]" 2016 WL 1159199, at *3. The panel acknowledged the Crawford decision but declined to rule on the standard of review:

> We need not determine whether the panel in Crawford's assessment that a challenge to one's placement on the sex offender register is basically a challenge to the sentence, subject to review only for abuse of discretion, [is correct] because under either the de novo or abuse of discretion standard, we conclude that the trial court did not err in ordering the defendant to register as a sex offender.

Id. So as to avoid further confusion, this court will address the issue, although the outcome would be the same as it was in Bickford, that under either standard the trial court did not err.

In Ward, our supreme court addressed whether a trial court is required to advise a defendant of the sex offender registration requirement before accepting a guilty plea. 315

S.W.3d at 469. The court held that the sex offender registration requirement was a collateral consequence of a guilty plea and that a trial court's failure to advise a defendant of the registration requirement did not, therefore, render a guilty plea constitutionally infirm. Id. at 472. The court, citing to Tennessee Code Annotated section 40-39-201, reasoned that "[t]he General Assembly clearly indicated its intent that the Registration Act was a remedial and regulatory measure rather than a punitive measure" and that, "as noted by the General Assembly, the registration requirement d[id] not inflict additional punishment . . . nor d[id] it alter the range of punishment." Id. at 469-70. The court summarized, "[W]hile the registration requirement is undoubtedly a definite, immediate, and largely automatic consequence of a conviction of a sexual offense or violent sexual offense, it does not have an effect on the length, manner, or service of the defendant's punishment." Id. at 472. Despite this holding, we agree with the State that Ward is not instructive on the issue of the standard of review to be applied to a trial court's decision concerning whether an offender should be placed on the registry. Indeed, in most cases, the registry requirement is automatic and not subject to a trial court's determination at all.

In our assessment, the standard of review adopted in Bise applies here. We rely, in large part, on the decision of our supreme court in State v. King, 432 S.W.3d 316, 322-25 (Tenn. 2014), wherein the court applied the Bise standard of review to a trial court's sentencing decision to either grant or deny judicial diversion. In so holding, the court initially recognized that "the conditional probationary period incident to the grant of judicial diversion d[id] not qualify as a sentence per se." King, 432 S.W.3d at 324 (citing State v. Turco, 108 S.W.3d 244, 248 (Tenn. 2003) (rejecting that judicial diversion is a sentence for purposes of the Tennessee Rules of Criminal Procedure); State v. Steven Matthew Messer, No. E2013-00647-CCA-R3-CD, 2014 WL 259706, at *3 (Tenn. Crim. App. Jan. 22, 2014) ("Judicial diversion, is not now, and never has been, a sentence[.]"); State v. Paresh J. Patel, No. M2012-02130-CCA-R3-CD, 2013 WL 3486944, at *8 (Tenn. Crim. App. July 10, 2013) (Witt, J., concurring) ("Our case law is clear that a judicial diversion term is not a sentence under the terms of the Sentencing Act.")). The court continued, "Nevertheless, Bise and its progeny establish that the abuse of discretion standard of appellate review accompanied by a presumption of reasonableness applies to all sentencing decisions." Id. (citing State v. Pollard, 432 S.W.3d 851, 864 (Tenn. 2013) ("The abuse of discretion standard, accompanied by a presumption of reasonableness, is the appropriate standard of appellate review for all sentencing decisions." (emphasis added by King); Caudle, 388 S.W.3d at 278 (observing that the abuse of discretion standard accompanied by a presumption of reasonableness applies to "'sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act'" (emphasis added by King) (quoting Bise, 380 S.W.3d at 707))). While the registration requirement has been dubbed nonpunitive, it is still "undoubtedly a definite [and] immediate . . . consequence of a conviction of a sexual offense or violent

-10-

sexual offense," see Ward, 315 S.W.3d at 472, and therefore, part of the trial court's overall sentencing decision.

In addition, the "may order" language of the statute indicates that trial courts have discretion in placing a first offender convicted of statutory rape on the registry. See Tenn. Code Ann. § 39-13-506(d)(2)(B). Our supreme court reviewed the same "may order" language of Tennessee Code Annotated section 40-35-115(b) in connection with a defendant's challenge to the imposition of consecutive sentencing. See Pollard, 432 S.W.3d at 859-60. The court reasoned that the "may order" language of the consecutive sentencing statute "afforded broad discretion to the trial courts" and concluded that "the discretionary language . . . call[ed] for the adoption of an abuse of discretion standard with a presumption of reasonableness." Id.

The trial court's discretionary role under section 39-13-506(d)(2)(B) is virtually identical to its role when determining other aspects of sentencing following a conviction, and those aspects are frequently considered collectively. It would be unwieldy to treat section 39-13-506(d)(2)(B) differently. In addition, we are not persuaded by the Defendant's argument to treat this determination otherwise merely because the Registration Act is found in title 40, chapter 39, part 2, rather than in the Sentencing Act itself. For all of these reasons, we are convinced that the appropriate standard of appellate review for a trial court's determination regarding whether a defendant should be required to register as a sex offender is an abuse of discretion accompanied by a presumption of reasonableness.

## II. *Appropriate Considerations*

The Defendant argues that "the trial court erroneously interpreted T[ennessee] C[ode] A[nnotated] [section] 39-13-506 by concluding it authorized the court to consider evidence of a separate, unrelated offense[,]" i.e., the images found on the Defendant's cell phone. The Defendant submits that "[t]here is nothing ambiguous about" section 39-13-506 and that "[t]he statute is clear that what is to be taken into account are 'the facts and circumstances surrounding the offense'—no more and no less." The Defendant continues, "The statute also clarifies what is meant by 'facts and circumstances' by going on to state, 'including the offense for which the person was originally charged and whether the conviction was the result of a plea bargain agreement.'" Moreover, the Defendant maintains that, simply because certain offenses are charged in the same indictment, does not mean that the trial court can consider all offenses charged therein. The Defendant also contends that the trial court was not authorized to consider the presentence report in rendering its decision because "the statute at issue here is unrelated to the Sentencing Act and placement on the sex offender registry is not a sentence."

-11-

The State responds that "[a] plain reading" of the statute "reveals that the trial court is authorized to consider all of the relevant circumstances when deciding whether to place [a defendant] on the registry." "Accordingly, the trial court was permitted to consider the facts and circumstances of the offense, the information in [the] Defendant's presentence report, and the images on [the] Defendant's phone containing possible child pornography." Furthermore, the State "agrees with [the] Defendant that the statute . . . is unambiguous." The State surmises that the "Defendant's cramped reading of this statute would limit the trial court's inquiry to a narrow examination of the circumstances of the offense" and that "[s]uch a reading would unnecessarily curtail the trial court's consideration[] and force it to ignore evidence that may be highly relevant to the question at issue." We agree with the State in all regards.

A. Statutory Interpretation. The primary goal of statutory interpretation is to carry out legislative intent without expanding or restricting the intended scope of the statute. State v. Smith, 484 S.W.3d 393, 403 (Tenn. 2016) (citations omitted). In determining legislative intent, we first must look to the text of the statute and give the words of the statute "their natural and ordinary meaning in the context in which they appear and in light of the statute's general purpose." Mills v. Fulmarque, Inc., 360 S.W.3d 362, 368 (Tenn. 2012) (citations omitted). When a statute's language is clear and unambiguous, we enforce the statute as written; we need not consider other sources of information. Frazier v. State, 495 S.W.3d 246, 249 (Tenn. 2016).

Here, the statute says that the trial court "may order, after taking into account the facts and circumstances surrounding the offense, including the offense for which the person was originally charged and whether the conviction was the result of a plea bargain agreement, that the person be required to register as a sexual offender[.]" Tenn. Code Ann. § 39-13-506(d)(2)(B). We agree with the parties that the statute governing this case is clear and unambiguous. Section 39-13-506(d)(2)(B) requires the trial court to consider the facts and circumstances surrounding the offense in rendering its decision to place a defendant on the registry—no more, no less. However, while the statute imposes this requirement, it does not state that the "facts and circumstances surrounding the offense" are the sole consideration for the trial court in making this determination. Moreover, given the discretionary nature of section 39-13-506(d)(2)(B), this is not a case where "the mention of one subject in a statute means the exclusion of other subjects that are not mentioned." See State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991) (describing the maxim of statutory construction *expressio unius est exclusio alterius*). Accordingly, when making a decision to place a defendant on the sex offender registry, trial courts must consider "the facts and circumstances surrounding the offense" and may consider any additional relevant factors.

B. <u>Presentence Report</u>.  The Defendant contends that the trial court was not authorized to consider the presentence report in rendering its decision.  Initially, we note that the Defendant never objected to the trial court's use of the presentence report at the hearing, only to the trial court's consideration of the facts of Count 2 provided therein.  Regardless, because we have held in the previous section of this opinion that the trial court is to consider its determination under section 39-13-506(d)(2)(B) in the same way it would any other sentencing determination, the rules governing preparation of the presentence report found in Tennessee Code Annotated section 40-35-203 apply.  When the parties have entered into a plea agreement with an agreed-upon sentence, the trial court is not required to hold a sentencing hearing or to review a presentence report, although the judge may choose to direct that a report be prepared.  Tenn. Code Ann. § 40-35-203(b).  However, when a defendant has pled guilty or been found guilty after trial, the trial court "<u>shall</u> set and conduct a sentencing hearing."  Tenn. Code Ann. § 40-35-203(a) (emphasis added).  "There shall be a presentence report and hearing <u>on any issue of sentencing</u> not agreed upon by the parties and accepted by the court."  Tenn. Code Ann. § 40-35-203(b) (emphasis added).  This was an issue of sentencing not agreed upon by the parties, and therefore, preparation of the presentence report was mandatory.  Accordingly, the trial court properly considered the presentence report in making its determination to place the Defendant on the registry.

C. <u>Other Relevant Factors</u>.  We conclude that the trial court, in addition to its mandatory consideration of the facts and circumstances surrounding the offense, is permitted to consider all of the relevant circumstances, including those in the presentence report, when deciding whether to place a defendant on the registry pursuant to section 39-13-506(d)(2)(B).  This court's decisions in <u>Bickford</u> and <u>Crawford</u> illustrate the proper procedure to be followed and what other factors may be implicated.

In <u>Bickford</u>, following the defendant's guilty plea to statutory rape, the trial court held a sentencing hearing on (1) whether the defendant should be granted judicial diversion and (2) whether the defendant was required to register as a sex offender pursuant to Tennessee Code Annotated section 39-13-506(d)(2)(B).  2016 WL 1159199, at *1.  At the hearing, the trial court considered the defendant's presentence report, testimony from the defendant's probation officer, the results of the defendant's psychosexual evaluation, and testimony from the doctor who conducted the evaluation.  <u>Id.</u> at *1-2.  On appeal, this court affirmed the trial court's decision to place the defendant on the sex offender registry.  Relying on the evidence presented at the hearing, this court reasoned that "[t]he defendant appear[ed] to have the tendency to not tell the truth or take responsibility for her actions"; "that the defendant was deceptive and untruthful in answering questions during her evaluation"; and that "the defendant showed a tendency to disown responsibility for her situation and to not take the judicial process seriously."  <u>Id.</u> at *3-4.

-13-

Likewise, in Crawford, the trial court accepted the defendant's guilty plea to two counts of statutory rape. 2015 WL 3610551, at *1. The "plea agreement specified that a partial sentencing hearing would be held to determine 'whether the defendant should receive judicial diversion and whether he should be placed on the Sex Offender Registry.'" Id. At the hearing, the trial court considered the defendant's presentence report; the results of the defendant's psychosexual evaluation; testimony from the victim's father; testimony from a detective about the defendant's Facebook conversations and forty friends who were "high-school-aged girls"; testimony from the licensed clinical social worker who performed the defendant's psychosexual evaluation; and testimony from the defendant. Id. at *1-3. The defendant appealed, arguing that the trial court abused its discretion by requiring him to register, "specifically because the proof presented at the hearing was that he 'presented little risk of reoffending and is not a sexual predator.'" Id. at *3. This court affirmed, reasoning as follows:

> [T]he trial court thoroughly and completely recounted the factual basis for the guilty pleas, the testimony presented both at the hearing and in the presentence report and psychosexual evaluation, and made detailed findings of fact prior to ordering [the d]efendant to register as a sex offender. The trial court took care to specifically note [the d]efendant's lack of credibility in addition to his gang affiliation, admitted drug use, and bevy of juvenile female Facebook friends. The trial court also noted the fact that [the d]efendant continued to pursue and engage in a sexual relationship with the victim despite the fact he knew she was, at most, seventeen.

Id. at *4.

These cases illustrate that a trial court may consider all relevant evidence available when making a registry determination under section 39-13-506(d)(2)(B). This includes all the facts leading to all of the original charges and plea bargain. In fact, contrary to the Defendant's argument, the statute itself permits examination of "the offense for which the person was originally charged and whether the conviction was the result of a plea bargain agreement." See Tenn. Code Ann. § 39-13-506(d)(2)(B). However, we reject the Defendant's argument that "[t]he statute . . . clarifies what is meant by 'facts and circumstances' by going on to state, 'including the offense for which the person was originally charged and whether the conviction was the result of a plea bargain agreement.'" Section 39-13-506(d)(2)(B) simply uses the word "including" following the verbiage "facts and circumstances surrounding the offense" and does not attempt to provide an exclusive definition of what is meant by that phrase. Accordingly, when making a decision to place a defendant on the sex offender registry, trial courts must consider "the facts and circumstances surrounding the offense," which includes, but is not

limited to, "the offense for which the person was originally charged and whether the conviction was the result of a plea bargain agreement[.]"

Moreover, a defendant may wish the trial court to look at mitigating evidence in rendering its decision, like as here, where defense counsel requested that the trial court consider the Defendant's behavior while he was out on bond. We agree with the State that the "Defendant's cramped reading of this statute would limit the trial court's inquiry to a narrow examination of the circumstances of the offense" and that "[s]uch a reading would unnecessarily curtail the trial court's consideration[] and force it to ignore evidence that may be highly relevant to the question at issue." Consequently, the trial court was authorized to consider the images found on the Defendant's cell phone.

## III. *Due Process*

Next, the Defendant contends that "the trial court's consideration of evidence relating to the nolled count of the indictment[, sexual exploitation of a minor for possession of the pornographic images,] violated [his] right to procedural due process." The Defendant, citing to cases from other jurisdictions, submits that "the fact alone that the court relied on a nolled charge implicates due process concerns." In addition, according to the Defendant, he "had a due process right to perform independent forensic testing of the evidence against him" because "[t]he parties contested the age of the post-pubescent young women in the photographs." The Defendant desired for forensic testing to perform "reverse image searches" to learn "the identity of the models" in the photographs and, thus, their age. The Defendant cites to State v. Scott, 3 S.W.3d 746 (Tenn. 2000), in support of his argument that he is entitled to independent forensic testing because his liberty is at stake.

The State replies that "the trial court's consideration of evidence found on [the] Defendant's phone did not violate [his] due process rights." Initially, the State submits that the Defendant has failed to identify a viable procedural due process claim. The State argues that Scott does not provide the Defendant with relief because the Scott court's "concern about a defendant's right to a 'fair trial' does not—and cannot—apply in this case because [the] Defendant did not go to trial."

The Fourteenth Amendment to the Constitution of the United States guarantees that no "State [shall] deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The Law of the Land Clause in Article I, section 8 of the Tennessee Constitution "has consistently been interpreted as conferring identical due process protections as its federal counterparts." Mansell v. Bridgestone Firestone North American Tire, LLC, 417 S.W.3d 393, 407 (Tenn. 2013) (citing Burford v. State, 845 S.W.2d 204, 207 (Tenn. 1992)). Our supreme court has acknowledged that the concept of due process entails both procedural and substantive components. Id. (citing

-15-

Lynch v. City of Jellico, 205 S.W.3d 384, 391 (Tenn. 2006)). "The most basic principle underpinning procedural due process is that individuals be given an opportunity to have their legal claims heard at a meaningful time and in a meaningful manner." Id. (quoting Lynch, 205 S.W.3d at 391). "In contrast to procedural due process, substantive due process bars oppressive government action regardless of the fairness of the procedures used to implement the action." Id. at 409 (citing Lynch, 205 S.W.3d at 391-92).

We note that we are dealing with a matter of substantive due process, not procedural due process, as argued by the Defendant. He does not assert that he was denied the opportunity to have his claim heard in a meaningful time and manner. Accordingly, the three-factor test established by Mathews v. Eldridge, 424 U.S. 319 (1976),[7] and cited to by the Defendant, does not apply. Substantive due process, on the other hand, is implicated where the government acts in a manner that is (1) arbitrary, irrational or improperly motivated or (2) so egregious that it shocks the conscience. County of Sacramento v. Lewis, 523 U.S. 833, 840 (1998); see also Abdur'Rahman v. Bredesen, 181 S.W.3d 292, 309 (Tenn. 2005).

Due process of law principles require the appointment of expert assistance at trial when a defendant establishes that such assistance is necessary to conduct a constitutionally adequate defense. See State v. Barnett, 909 S.W.2d 423, 426-28 (Tenn. 1995). While the "State need not provide an indigent defendant with all the assistance his wealthier counterpart might buy . . . fundamental fairness requires a State to provide an indigent defendant with the 'basic tools of an adequate defense or appeal.'" Id. at 426 (quoting Ake v. Oklahoma, 470 U.S. 68, 77 (1985)).

The Defendant cites to Scott and argues that

> the defense showed that [the Defendant] would be deprived of a fair trial without independent forensic testing to determine if the evidence showed what the [S]tate said it did. There was also a reasonable likelihood that the expert testing would [have] be[en] of material help in the preparation of the case.

---

[7] In determining whether procedural due process has been met, courts must consider three factors established by the United States Supreme Court:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Mathews, 424 U.S. at 335; see also Smith v. State, 357 S.W.3d 322, 357 (Tenn. 2011).

In Scott, the Tennessee Supreme Court held that the defendant was improperly denied a DNA expert at the trial level. 33 S.W.3d at 753-55. The court reasoned (1) that the defendant "demonstrated a particularized need for expert assistance in the field of DNA evidence at the time of his request[,]" such as, "to establish familiarity with proper DNA protocols and to point to relevant issues and lines of cross-examination"; and (2) that the defendant had "shown a reasonable likelihood that the expert assistance [was] of material help in the preparation of his case." Id.

In criminal cases, a particularized need "is established when a defendant shows by reference to the particular facts and circumstances that the requested services relate to a matter that, considering the inculpatory evidence, is likely to be a significant issue in the defense at trial and that the requested services are necessary to protect the defendant's right to a fair trial." Tenn. Sup. Ct. R. § 5(c)(2) (citing Barnett, 909 S.W.2d at 423). The Tennessee Supreme Court adopted a two-pronged test to determine whether a defendant has established a "particularized need" for expert services: "(1) the defendant must show that he or she 'will be deprived of a fair trial without the expert assistance'; and (2) the defendant must show that 'there is a reasonable likelihood that [the assistance] will materially assist [him or her] in the preparation of [the] case.'" Scott, 33 S.W.3d at 753 (quoting Barnett, 909 S.W.2d at 430). A trial court's denial of expert services will not be reversed on appeal absent a showing that the trial court abused its discretion. Barnett, 909 S.W.2d at 431.

Prior to entry of his guilty plea to statutory rape, the Defendant filed a motion to compel requesting electronic copies of the photographs so that he could obtain the services of an expert to perform reverse image searches. He never specifically requested funding for search services. A hearing was held on the motion to compel on August 10, 2016. At the conclusion of the hearing, the trial court instructed defense counsel to "come back" when he knew "exactly how [the reverse image search was] going to be done and under what circumstances, and [by] whom." Although defense counsel agreed, it does not appear from the record before this court that this proof was ever forthcoming. Thereafter, Count 2 of the indictment was nolled, and the Defendant entered a guilty plea covering Counts 1, 3, and 4. The trial court never ruled on the Defendant's motion to compel.

At the sentencing hearing, the Defendant merely requested that the trial court not consider the photographs and the facts of Count 2 in making its decision to place the Defendant on the registry because Count 2 had been severed prior to the Defendant's guilty plea, Count 2 "was dismissed[,]" and the "claims" in Count 2 had "in no way been proven[.]" The Defendant did not base his argument on the need for expert services, and the Defendant did not raise this issue in his motion to reconsider. Accordingly, we hold that the Defendant has waived his argument that he had a due process right to forensic

-17-

testing for performance of reverse image searches of the photographs. See Tenn. R. App. P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error."). Moreover, we decline to review the issue for plain error. See Tenn. R. App. P. 36(b).

In addition, the Defendant contends that his right to due process of law was violated merely by the trial court's consideration of the nolled count of the indictment. The United States Supreme Court has held that the Sixth and Fourteenth Amendments to the United States Constitution do not prohibit a sentencing court from considering a defendant's previous criminal behavior that does not result in conviction. See Williams v. New York, 337 U.S. 241 (1949). In Williams, the Court affirmed the trial court's decision to consider evidence from a presentence report of the defendant's past criminal behavior including his commission of burglaries not resulting in conviction and his activities indicating a "morbid sexuality." Id. at 244. Justice Black, delivering the opinion of the Court, wrote:

> The due-process clause should not be treated as a device for freezing the evidential procedure of sentencing in the mold of trial procedure. So to treat the due-process clause would hinder if not preclude all courts—state and federal—from making progressive efforts to improve the administration of criminal justice.

Id. at 251. Furthermore, the Supreme Court has rejected a defendant's claim that the Due Process Clause requires the "clear and convincing evidence" standard in the sentencing phase and affirmed the trial court's decision to consider evidence that the defendant possessed a firearm during the commission of the offense under the preponderance standard. McMillan v. Pennsylvania, 477 U.S. 79, 91 (1986).

Tennessee courts have held that "[o]rdinarily mere arrests or indictments are not evidence of the commission of a prior crime." State v. Miller, 674 S.W.2d 279, 284 (Tenn. 1984). A trial court should not use evidence showing mere arrests, without more, to enhance a sentence. State v. Marshall, 870 S.W.2d 532, 542 (Tenn. Crim. App. 1993) (citing State v. Newsome, 798 S.W.2d 542, 543 (Tenn. Crim. App. 1990)). Tennessee, however, has no per se rule against considering unadjudicated conduct. State v. Robinson, 971 S.W.2d 30, 46 (Tenn. Crim. App. 1997). Prior criminal behavior which was the basis of an arrest may be considered if it is established by a preponderance of the evidence. State v. Carico, 968 S.W.2d 280, 287 (Tenn. 1998) (the admission of evidence of sexual acts—other than the acts for which the defendant was convicted—at the sentencing hearing did not violate the appellant's right to due process). In applying the preponderance of the evidence standard, a sentencing court may find that a defendant

-18-

committed a prior criminal act even though he or she had been acquitted of that act under the reasonable doubt standard. State v. Winfield, 23 S.W.3d 279, 284 (Tenn. 2000); see State v. Desirey, 909 S.W.2d 20, 31 (Tenn. Crim. App. 1995).

These federal and state decisions recognize that the trial court may utilize criminal behavior shown by a preponderance of the evidence to enhance a sentence without violating federal or state due process principles. Accordingly, consideration of the nolled count of the indictment was not error.

## IV. *Trial Court's Ruling*

The Defendant argues that "the trial court erred by failing to take into account the facts and circumstances of the offense" as required by section 39-13-506(d)(2)(B). According to the Defendant, the trial court failed to articulate for the record "how it took these facts and circumstances into account," and the trial court's conclusory statement that it was giving "consideration to the underlying facts in this case" was insufficient to facilitate meaningful appellate review. The Defendant further maintains that the photographs relied upon by the trial court did not meet the requirement of "lascivious exhibition of the female breast or the genitals, buttocks, anus or pubic or rectal area of any person" as required by Tennessee Code Annotated section 39-17-1002(8)(G).

The State responds that the "Defendant's argument glosses over the trial court's finding that the facts and circumstances of his specific offense, along with the photographs, warrant[ed] placement on the registry." In addition, the State maintains that "the trial court was not required to find that the images found on [the] Defendant's phone actually constituted child pornography in order to rely on them when making the registry determination" because the trial court was not enhancing the Defendant's sentence. The State concludes that the trial court did not abuse its discretion in requiring the Defendant to register as a sex offender.

The trial court continued the April 26, 2017 hearing at the defense's request to allow time for the State to admit the photographs from the Defendant's phone into evidence. The trial court did hear argument that day before the case was continued, including discussion about the circumstances of the offense, the images found on the Defendant's phone, and his internet history. The trial court noted that the facts underlying the Defendant's plea to statutory rape supported the greater charge of solicitation of a minor, which was an offense that required mandatory registration as a sex offender. The trial court further remarked, "[T]he statute on the statutory rape specifically says to consider the facts and circumstances of the indictment, not what he pled to. . . . [T]he State has clearly got a legitimate argument that the facts support [placement on the registry] because it's really solicitation of a minor." In addition, the trial court observed that the Defendant indicated during his statement to police that he

-19-

was aware of the victim's age. After the images were admitted under seal, the trial court placed its ruling on the record on May 3, 2017. The trial court first explained, "I have given consideration to the underlying facts in this case, which the statute mandates that I do."

We find that the trial court's comments at the hearings on April 26 and May 3, 2017, indicate that it considered the circumstances surrounding the offense, including that the Defendant pled guilty to facts establishing the greater offense of solicitation of a minor and that the Defendant was aware of the victim's age when he sent the text message. The trial court provided sufficient articulation of its reasons for requiring the Defendant to register. See Bise, 380 S.W.3d at 705 n.41 (reiterating that "the trial court is in a superior position to impose an appropriate sentence and articulate the reasons for doing so"). Therefore, the trial court's decision is reviewed for an abuse of discretion with a presumption of reasonableness.

After considering the facts and circumstances surrounding the statutory rape offense, the trial court said that it had also "reviewed the photographs . . . that were retrieved from [the Defendant's] phone." The trial court believed that the "photos were . . . absolutely sexually oriented" and were "certainly suggestive of someone who has interests in minor children." We agree.

"[F]acts relevant to sentencing need be established only 'by a preponderance of the evidence and not beyond a reasonable doubt.'" State v. Cooper, 336 S.W.3d 522, 524 (Tenn. 2011) (quoting Winfield, 23 S.W.3d at 283). Here, the trial court did more than rely on the arrest or indictment for sexual exploitation of a minor in Count 2. Five photographs were admitted as exhibits. The Defendant was charged with sexual exploitation of a minor, defined as, "It is unlawful for any person to knowingly possess material that includes a minor engaged in: (1) Sexual activity; or (2) Simulated sexual activity that is patently offensive." See Tenn. Code Ann. § 39-17-1003(a). Three of the photographs showed postpubescent young females with fully exposed genitalia. These three photographs clearly met the "sexual activity" definition of "lascivious exhibition of the female breast or the genitals, buttocks, anus or pubic or rectal area of any person[,]" as required by Tennessee Code Annotated section 39-17-1002(8)(G). The Defendant did not dispute that these three photographs were pornography, only that the State failed to establish the age of the models.

Subsection (c) of the sexual exploitation of minor statute provides,

In a prosecution under this section, the trier of fact may consider the title, text, visual representation, Internet history, physical development of the person depicted, expert medical testimony, expert computer forensic testimony, and any other relevant evidence, in determining whether a

-20-

person knowingly possessed the material, or in determining whether the material or image <u>otherwise represents or depicts that a participant is a minor</u>.

Tenn. Code Ann. § 39-17-1003(c) (emphasis added). In addition, the "[S]tate is not required to prove the actual identity or age of the minor." Tenn. Code Ann. § 39-17-1003(e).

The trial court heard testimony from Detective Gish about the cell phone extraction performed on the Defendant's phone, including recovery of the Defendant's internet history, bookmarks, and saved images. In addition, Detective Gish opined that, based upon his review of the phone's contents, the Defendant "was definitely looking for young girls, sex and child pornography." The Defendant's internet history from his phone included visits to multiple websites advertising pornography of teenage girls (e.g., innocentcute.com, getmoreteens.com, nakedyounggirl.com, and teensexhg.com, underwearteenies.com). One of the photographs bore the watermark "CumaholicTeens.com." The Defendant also indicated to the police that he was aware the victim in this case was a minor. We conclude that the Defendant's possession of child pornography was established by a preponderance of the evidence and was "certainly suggestive of someone who has interests in minor children." <u>See</u> <u>State v. Aguilar</u>, 437 S.W.3d 889, 903-04 (Tenn. Crim. App. 2013) (affirming sexual exploitation of a minor conviction when "[t]he search terms utilized by the defendant[,] along with the extraordinarily descriptive and explicit titles of the files[,]" strongly suggested that the files contained actual minors engaged in sexual activity, and the trier of fact had an opportunity to view the photos) (citing Tenn. Code Ann. § 39-17-1003(c)). Accordingly, we surmise that the trial court did not abuse its discretion in requiring the Defendant to register as a sex offender. The Defendant is not entitled to relief.

### V. *Judgment Forms*

Finally, we note that the record does not include a judgment form for Count 2, 3, or 4. As noted in the opinion, Count 2 was "nolle prosequi" at the behest of the State, and Counts 3 and 4 were dismissed in accordance with the plea agreement. In the "Special Conditions" box on the judgment form for the statutory rape conviction in Count 1, it is stated, "D/M Cts. 3 [and] 4." The trial court should, on remand, enter judgment forms reflecting the disposition of Counts 2, 3, and 4 in separate uniform judgment documents. <u>See</u> <u>State v. Davidson</u>, 509 S.W.3d 156, 217 (Tenn. 2016) (requiring a trial court to prepare a uniform judgment document for each count of the indictment).

## CONCLUSION

Upon consideration of the foregoing and the record as a whole, the judgments of the trial court are affirmed.  However, we remand the case for entry of judgment forms for each count of the indictment.

_____
D. KELLY THOMAS, JR., JUDGE