IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs July 1, 2021

## IN RE TRINITY S. ET AL.

**Appeal from the Juvenile Court for McMinn County**
**No. 2020-JV-269      Wylie Richardson, Judge**

_____

**No. E2021-00098-COA-R3-PT**
_____

A mother appeals the juvenile court's decision to terminate her parental rights.  She challenges the juvenile court's determination by clear and convincing evidence that termination of her parental rights was in the best interest of the children.  We affirm the juvenile court's termination of the mother's parental rights.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S., and THOMAS R. FRIERSON, II, J., joined.

Wilton A. Marble, Jr., Cleveland, Tennessee, for the appellant, Chelsie S.

Herbert H. Slatery, III, Attorney General and Reporter, and Amber L. Seymour, Assistant Attorney General, for the appellee, Tennessee Department of Children's Services.

**OPINION**

FACTUAL AND PROCEDURAL BACKGROUND

This case involves the termination of Chelsie S.'s ("Mother") parental rights to her three children, Trinity, James, and Oaklee, who were born in 2014, 2016, and 2019, respectively.[1]  On March 21, 2019, the Tennessee Department of Children's Services ("DCS" or "the Department") removed Trinity and James from Mother's custody due to Mother's substance abuse issues.  That same day, DCS filed a petition for dependency and neglect, and the juvenile court entered a protective custody order placing Trinity and James in DCS's custody after finding that probable cause existed to believe that they were dependent and neglected.

_____

[1] James S. is the father of Trinity and James.  Nicholas G. is the putative father of Oaklee.  The juvenile court also terminated both fathers' parental rights, and neither father appealed.

The Department removed Oaklee from Mother's custody on October 24, 2019, and that same day, DCS filed a petition for dependency and neglect. The juvenile court entered a protective custody order placing him in DCS's custody after finding probable cause existed to believe that he was dependent and neglected due to in-utero drug exposure by Mother. All three children were placed in the same foster home, where they have resided throughout the custodial episode. In January 2020, the juvenile court adjudicated all three children dependent and neglected and found that, pursuant to Tenn. Code Ann. § 37-1-102(b)(27)(a)(1), Mother severely abused Oaklee by using drugs while pregnant with him. No appeal was taken from the adjudicatory order.

The Department filed a petition to terminate Mother's parental rights on May 27, 2020. After a one-day hearing via video conference, the juvenile court entered an order terminating Mother's parental rights. The court determined that the following grounds for termination had been proven by clear and convincing evidence: (1) persistence of conditions and (2) severe child abuse. The court further determined that there was clear and convincing evidence that termination of Mother's parental rights was in the best interest of the children.

Mother appealed and presents the following issues for our review: whether the trial court abused its discretion in denying her motion to continue the hearing until it could be held in-person and whether the trial court erred in determining that termination of her parental rights was in the best interest of the children.

STANDARD OF REVIEW

Under both the federal and state constitutions, a parent has a fundamental right to the care, custody, and control of his or her own child. *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *In re Angela E.*, 303 S.W.3d 240, 249-50 (Tenn. 2010); *Nash-Putnam v. McCloud*, 921 S.W.2d 170, 174-75 (Tenn. 1996) (citing *Nale v. Robertson*, 871 S.W.2d 674, 678 (Tenn. 1994)). Although this right is fundamental, it is not absolute and may be terminated in certain situations. *In re Angela E.*, 303 S.W.3d at 250. Our legislature has identified "'those situations in which the state's interest in the welfare of a child justifies interference with a parent's constitutional rights by setting forth grounds on which termination proceedings can be brought.'" *In re Jacobe M.J.*, 434 S.W.3d 565, 568 (Tenn. Ct. App. 2013) (quoting *In re W.B., IV.*, Nos. M2004-00999-COA-R3-PT, M2004-01572-COA-R3-PT, 2005 WL 1021618, at *7 (Tenn. Ct. App. Apr. 29, 2005)).

Tennessee Code Annotated section 36-1-113 provides the grounds and procedures for terminating parental rights. First, a petitioner seeking to terminate parental rights must prove that at least one ground for termination exists. Tenn. Code Ann. § 36-1-113(c)(1); *In re Angela E.*, 303 S.W.3d at 251. Second, a petitioner must prove that terminating parental rights is in the child's best interest. Tenn. Code Ann. § 36-1-113(c)(2); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002).

The termination of a parent's rights is one of the most serious decisions courts make because "[t]erminating parental rights has the legal effect of reducing the parent to the role of a complete stranger," *In re W.B., IV*, 2005 WL 1021618, at *6, "and of 'severing forever all legal rights and obligations of the parent or guardian.'" *Id.* (quoting Tenn. Code Ann. § 36-1-113(l)(1)). Consequently, a parent has a constitutional right to fundamentally fair procedures during termination proceedings. *In re Hannah C.*, No. M2016-02052-COA-R3-PT, 2018 WL 558522, at *2 (Tenn. Ct. App. Jan. 24, 2018) (citing *In re Carrington H.*, 483 S.W.3d 507, 522 (Tenn. 2016)).

Tennessee law ensures fundamental fairness in termination proceedings by requiring a heightened standard of proof—clear and convincing evidence. *See* Tenn. Code Ann. § 36-1-113(c)(1); *In re Carrington H.*, 483 S.W.3d at 522. Before a parent's rights may be terminated, a petitioner must prove both the grounds and the child's best interest by clear and convincing evidence. Tenn. Code Ann. § 36-1-113(c); *In re Valentine*, 79 S.W.3d at 546. "Clear and convincing evidence 'establishes that the truth of the facts asserted is highly probable, and eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" *In re Serenity B.*, No. M2013-02685-COA-R3-PT, 2014 WL 2168553, at *2 (Tenn. Ct. App. May 21, 2014) (quoting *In re M.J.B.*, 140 S.W.3d 643, 653 (Tenn. Ct. App. 2004)).

We review the trial court's findings of fact de novo with a presumption of correctness unless the evidence preponderates otherwise. TENN. R. APP. P. 13(d); *In re Serenity B.*, 2014 WL 2168553, at *2. In light of the heightened standard of proof, we must then make our own determination "as to whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, amount to clear and convincing evidence of the elements necessary to terminate parental rights." *In re Carrington H.*, 483 S.W.3d at 524.

ANALYSIS

I. Motion to continue.

The first issue raised by Mother concerns the juvenile court's denial of her motion to continue the termination hearing until it could be conducted in person. A decision to grant or deny a motion to continue falls within the sound discretion of the trial court. *In re Trinity P.*, No. E2019-01251-COA-R3-PT, 2020 WL 995788, at *4 (Tenn. Ct. App. Mar. 2, 2020). Thus, appellate courts decline to disturb a trial court's ruling on a motion to continue absent an abuse of discretion. *In re A'Mari B.*, 358 S.W.3d 204, 213 (Tenn. Ct. App. 2011). A court abuses its discretion when it "'applie[s] incorrect legal standards, reache[s] an illogical conclusion, base[s] its decision on a clearly erroneous assessment of the evidence, or employ[s] reasoning that causes an injustice to the complaining party.'" *State v. Banks*, 271 S.W.3d 90, 116 (Tenn. 2008) (quoting *Konvalinka v. Chattanooga-Hamilton Cty. Hosp. Auth.*, 249 S.W.3d 346, 358 (Tenn. 2008)). "Appellate courts should

permit a discretionary decision to stand if reasonable judicial minds can differ concerning its soundness." *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 223 (Tenn. Ct. App. 1999); *see also In re Kandace D.*, No. E2017-00830-COA-R3-PT, 2018 WL 324452, at *10 (Tenn. Ct. App. Jan. 8, 2018).

Mother argues that the juvenile court's decision to deny her motion and to conduct the termination hearing via video conferencing rather than waiting until it could be held in person deprived her of procedural due process. On March 13, 2020, the Tennessee Supreme Court entered an order declaring a state of emergency for the judicial branch due to the COVID-19 pandemic. *In re COVID-19 Pandemic*, No. ADM2020-00428 (Tenn. Mar. 13, 2020). In this order, the Court restricted in-person proceedings with only a few limited exceptions that are not relevant to this case and encouraged the use of video conferencing to conduct court proceedings. *Id.* This restriction on in-person proceedings remained in effect at the time of the termination hearing on January 5, 2021.[2]

Due process is a flexible concept that "calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). The basic principle of due process, however, "'is that individuals be given an opportunity to have their legal claims heard at a meaningful time and in a meaningful manner.'" *Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 417 S.W.3d 393, 407 (Tenn. 2013) (quoting *Lynch v. City of Jellico*, 205 S.W.3d 384, 391 (Tenn. 2006)). When determining whether this principle has been satisfied in termination of parental rights proceedings, courts consider the following three factors: "the private interests affected by the proceeding; the risk of error created by the State's chosen procedure; and the countervailing governmental interest supporting use of the challenged procedure." *Santosky v. Kramer*, 455 U.S. 745, 754 (1982); *see also Mansell*, 417 S.W.3d at 407.

In regard to the first factor—the private interests at risk—the United States Supreme Court has held that a parent has a strong personal interest in parental termination proceedings because he or she risks suffering "a unique kind of deprivation." *Lassiter v. Dep't of Soc. Servs. of Durham Cnty. N.C.*, 452 U.S. 18, 27 (1981). Thus, "[a] parent's interest in the accuracy and justice of the decision to terminate his or her parental status is . . . a commanding one." *Id.* A parent, however, is not the only party with a significant private interest at risk in a termination proceeding. The children also have a strong personal interest in the decision's accuracy and justness and in the decision's timeliness. Specifically, the children have a significant interest in a timely resolution of the matter in order to achieve stability and permanency. *See* Tenn. Code Ann. § 36-1-101(a)(5) (providing that termination and adoption proceedings should be resolved expeditiously "to enable the child to achieve permanency, consistent with the child's best interests, at the

---

[2] Approximately two months after the termination hearing, the Supreme Court lifted the restriction on in-person proceedings for termination proceedings. *In re COVID-19 Pandemic*, No. ADM2020-00429 (Tenn. Feb. 12, 2021).

earliest possible date"); Tenn. Code Ann. § 36-1-113(g)(3) (creating a ground for termination to prevent a child from lingering in foster care); *see also In re Raylan W.*, No. M2020-00102-COA-R3-PT, 2020 WL 4919797, at *15 (Tenn. Ct. App. Aug. 20, 2020) (stating that a child "deserves stability and permanence").

We next consider the second factor—the risk of erroneous deprivation of Mother's parental rights by holding the termination hearing by video conference. Mother contends that the video conference procedure deprived her of the ability to introduce evidence and to effectively cross-examine DCS's witnesses. We respectfully disagree. The record shows that Mother was physically present with her attorney and both appeared virtually for the termination hearing. Her attorney conducted extensive cross-examinations of DCS's two witnesses. Her attorney had the opportunity to call witnesses to testify on behalf of Mother but chose not to do so. Mother's attorney also had the opportunity to introduce documents into evidence. Mother failed to identify at trial or on appeal any specific problems that prevented her from introducing evidence. Under these circumstances, there is no evidence that conducting the hearing via video conference increased the risk that Mother would be erroneously deprived of her parental rights.

Last, we consider the third factor—the countervailing interests supporting the state's use of video conferencing to conduct the termination hearing. The state shares a parent's interest in the decision being accurate and has a compelling interest "in preserving and promoting the welfare of the child." *Santosky*, 455 U.S. at 766; *Lassiter*, 452 U.S. at 27; *see also Kottmyer v. Maas*, 436 F.3d 684, 690 (6th Cir. 2006) ("The right is limited by an equaling [sic] compelling governmental interest in the protection of children, particularly where the children need to be protected from their own parents."). The state also had an interest in protecting the general welfare—the parties, attorneys, and court personnel— from the risks connected with COVID-19. *See In re COVID-19 Pandemic*, No. ADM2020-00429 (Tenn. Mar. 13, 2020).

Mother asserts that continuing the hearing until in-person hearings resumed would not have resulted in any significant delay because our Supreme Court partially lifted the suspension on in-person proceedings five weeks after the juvenile court heard this case. At the time of the termination hearing, however, it remained uncertain how long it would be before an in-person termination hearing could be held due to the unknowns associated with the COVID-19 pandemic.

On balance, the countervailing interests of the state and the children support the juvenile court's use of video conferencing to conduct the termination hearing. We, therefore, conclude that Mother's due process rights were not violated when the juvenile court denied her motion to continue and conducted the termination hearing via video conference.

II.  Grounds for termination.[3]

    A.  Persistence of conditions.

The juvenile court terminated Mother's parental rights pursuant to Tenn. Code Ann. § 36-1-113(g)(3).  This ground is often referred to as "persistence of conditions" and allows courts to terminate parental rights in situations where:

> The child has been removed from the home or the physical or legal custody of a parent . . . for a period of six (6) months by a court order entered at any stage of proceedings in which a petition has been filed in the juvenile court alleging that a child is a dependent and neglected child, and:
>
> > (i) The conditions that led to the child's removal still persist, preventing the child's safe return to the care of the parent . . . , or other conditions exist that, in all reasonable probability, would cause the child to be subjected to further abuse or neglect, preventing the child's safe return to the care of the parent . . . ;
> >
> > (ii) There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent . . . in the near future; and
> >
> > (iii) The continuation of the parent . . . and child relationship greatly diminishes the child's chances of early integration into a safe, stable, and permanent home[.]

Tenn. Code Ann. § 36-1-113(g)(3)(A).

The persistence of conditions ground "focus[es] on the results of the parent's efforts at improvement rather than the mere fact that he or she had made them." *In re Audrey S.*, 182 S.W.3d 838, 874 (Tenn. Ct. App. 2005).  The purpose behind this ground for termination is "'to prevent the child's lingering in the uncertain status of foster child if a parent cannot within a reasonable time demonstrate an ability to provide a safe and caring environment for the child.'" *In re Arteria H.*, 326 S.W.3d 167, 178 (Tenn. Ct. App. 2010), *overruled on other grounds*, *In re Kaliyah S.*, 455 S.W.3d 533, 555 (quoting *In re A.R.*, No. W2008-00558-COA-R3-PT, 2008 WL 4613576, at *20 (Tenn. Ct. App. Oct. 13, 2008)).  Therefore, the question we must answer is "the likelihood that the child can be safely returned to the custody of the [parent], not whether the child can safely remain in

---

[3] On appeal, Mother does not challenge the juvenile court's determination that grounds existed to terminate her parental rights.  Nonetheless, we must review each ground relied upon by the juvenile court for terminating Mother's parental rights.  *See In re Carrington H.*, 483 S.W.3d at 525.

foster care." *In re K.A.H.*, No. M1999-02079-COA-R3-CV, 2000 WL 1006959, at *5 (Tenn. Ct. App. July 21, 2000).

Here, there is no dispute that the children were removed from Mother's custody by protective custody orders and later adjudicated dependent and neglected more than six months before the termination hearing began. *See* Tenn. Code Ann. § 36-1-113(g)(3)(B). The children were removed primarily due to Mother's issue with drug abuse. At the time of trial, Mother had done very little to address her substance abuse issues. Although she completed an alcohol and drug assessment, she never completed the recommended intensive outpatient classes, continued to test positive for drugs throughout the custodial episode, and continued to associate with a known drug user.

Other conditions preventing the children's safe return to Mother's custody also persisted at trial. For instance, she failed to maintain appropriate housing. Mother provided DCS with proof that she had housing through the Etowah Housing Authority in the summer of 2020, but she was evicted before DCS could complete a home visit. Thereafter, she failed to provide DCS with any other proof that she had obtained suitable housing, and she never requested that DCS conduct a home visit at any other address. At the time of trial, Mother's address remained unknown. Mother also failed to provide DCS with proof that she had obtained stable income. When DCS asked her if she was employed, Mother said she was "working somewhere every other weekend" but could not provide DCS proof of that employment because she was unqualified for the job. Mother's inability to establish stability and to address her drug abuse issues in the nearly two years following the removal of Trinity and James demonstrated that there is little likelihood that these conditions will be remedied at an early date.

The continuation of the parent and child relationship in this case would greatly diminish the children's chances of integrating into a permanent home. By the time of the termination hearing, Trinity and James had been residing in the foster home for nearly two years, and Oaklee had been residing in the foster home for approximately a year and a half. All of the children considered the foster home to be their home, and they often referred to the foster parents as "mom" and "dad." Indeed, the foster parents were the only parents Oaklee had ever known. If given the opportunity, the foster parents desired to adopt the children. We conclude that the juvenile court did not err in terminating Mother's parental rights pursuant to this ground.

B. Severe child abuse.

The juvenile court also terminated Mother's parental rights pursuant to Tenn. Code Ann. § 36-1-113(g)(4), which provides that parental rights may be terminated if:

> The parent or guardian has been found to have committed severe child abuse, as defined in § 37-1-102, under any prior order of a court or is found by the

court hearing the petition to terminate parental rights or the petition for adoption to have committed severe child abuse against any child[.]

As relevant here, "severe child abuse" means:

> The knowing exposure of a child to or the knowing failure to protect a child from abuse or neglect that is likely to cause serious bodily injury or death and the knowing use of force on a child that is likely to cause serious bodily injury or death[.]

Tenn. Code Ann. § 37-1-102(b)(27)(A)(i).

On January 28, 2020, the juvenile court entered an order adjudicating Oaklee dependent and neglected and finding that he was the victim of severe child abuse perpetrated by Mother due to her knowingly exposing him to drugs in-utero. Mother did not appeal the order, meaning it became a final, nonappealable order. As this Court has explained:

> The doctrine of *res judicata* applies when "an existing final judgment rendered upon the merits, without fraud or collusion, by a court of competent jurisdiction, is conclusive of rights, questions and facts in issue as to the parties and their privies, in all other actions in the same or any other judicial tribunal of concurrent jurisdiction." *Galbreath v. Harris*, 811 S.W.2d 88, 90 (Tenn. Ct. App. 1990). This court previously applied the doctrine of *res judicata* to prevent a parent from re-litigating whether she committed severe child abuse in a later termination of parental rights proceeding, when such a finding had been made in a previous dependency and neglect action. *See State v. Tate*, No. 01-A-01-9409-CV-00444, 1995 WL 138858, at *5 (Tenn. Ct. App. Mar. 31, 1995).

*In re Heaven L.F.*, 311 S.W.3d 435, 439 (Tenn. Ct. App. 2010); *see also In re Raylan W.*, 2020 WL 4919797, at *12-13. Mother and DCS were both parties to the dependency and neglect case, and the issue of whether Mother committed severe child abuse against Oaklee was fully litigated in those proceedings. Thus, the issue of whether Mother perpetrated severe child abuse against Oaklee is res judicata. Moreover, the juvenile court's finding that Mother committed severe child abuse against Oaklee also satisfies termination of Mother's parental rights to the other two children under Tenn. Code Ann. § 36-1-113(g)(4) because the statute explicitly provides that a parent's rights may be terminated when the parent "ha[s] committed severe child abuse against *any child*." (Emphasis added). We, therefore, conclude that the juvenile court did not err in terminating Mother's parental rights pursuant to this ground for termination.

III. Best interest.

Having determined that clear and convincing evidence of at least one statutory ground exists to terminate Mother's parental rights, we must next consider whether the trial court properly determined that termination of Mother's parental rights is in the best interest of the children. *See* Tenn. Code Ann. § 36-1-113(c)(2); *In re Audrey S.*, 182 S.W.3d at 860. After a court finds that clear and convincing evidence exists to support a ground for termination, the child's interests diverge from those of the parent and the court focuses on the child's best interests. *In re Audrey S.*, 182 S.W.3d at 877. A court must view the child's best interest from the perspective of the child, not that of the parent. *Id.* at 878. A finding that at least one ground for termination of parental rights exists does not necessarily require that a parent's rights be terminated. *Id.* at 877. Because some parental misconduct is redeemable, our statutes recognize that "terminating an unfit parent's parental rights is not always in the child's best interests." *Id.* The facts a court considers in its best interest analysis must be proven by "a preponderance of the evidence, not by clear and convincing evidence." *In re Kaliyah S.*, 455 S.W.3d at 555. Once a court makes the underlying factual findings, it should "consider the combined weight of those facts to determine whether they amount to clear and convincing evidence that termination is in the child's best interest." *Id.*

When considering whether terminating a parent's rights to a child is in the child's best interest, a trial court must consider the factors enumerated in Tenn. Code Ann. § 36-1-113(i).[4] A trial court is not required to find that each of the enumerated factors exists before concluding that it is in the best interest of the child to terminate a parent's rights. *In re M.A.R.*, 183 S.W.3d 652, 667 (Tenn. Ct. App. 2005). Although in some circumstances "the consideration of one factor may very well dictate the outcome of the analysis," *In re Audrey S.*, 182 S.W.3d at 878, a court is still obligated to consider "all the factors and all the proof," *In re Gabriella D.*, 531 S.W.3d 662, 682 (Tenn. 2017).

After considering all of the best interest factors, the juvenile court found that most of the factors favored terminating Mother's parental rights. *See* Tenn. Code Ann. § 36-1-113(i). The evidence in the record before us does not preponderate against the juvenile court's findings of fact.

The first best interest factor considers whether a parent "has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent." Tenn. Code Ann. § 36-1-113(i)(1). At the time of trial, Mother had done little to remedy her substance abuse issues. She completed an

---

[4] Effective April 22, 2021, the General Assembly amended the statute changing the best interest factors for courts to consider and providing that "court[s] shall consider all relevant and child-centered factors applicable to the particular case before the court." Tenn. Code Ann. § 36-1-113(i)(1). We do not apply this version of the statute. Rather, we apply the statute in effect when DCS filed the petition to terminate Mother's parental rights in May 2020.

alcohol and drug assessment but failed to attend any of the recommended intensive outpatient classes, and she continued testing positive for drugs. Therefore, this factor weighs in favor of termination.

The juvenile court also found that Mother failed to make a lasting adjustment of circumstances after reasonable efforts by the Department. Although it was relieved of the obligation to make reasonable efforts to assist Mother after the adjudication hearing in which the juvenile court found that Mother committed severe child abuse, DCS continued to offer assistance by paying for drug screens and providing references for any services Mother requested. Nevertheless, Mother did not avail herself of these reasonable efforts. She failed to attend the recommended treatment and failed to obtain and maintain stable income and housing. This factor weighs in favor of termination.

Mother contends that the juvenile court should not have considered both factors one and two in this case because factor one only applies to cases initiated by a private party while factor two only applies to cases initiated by DCS. Mother cites to no legal authority supporting her contention, and this Court is not aware of any such authority. Although the two factors contain similarities, the statute makes no delineation between their application to cases initiated by either a private party or DCS. Indeed, our Supreme Court interpreted the version of Tenn. Code Ann. § 36-1-113(i) in effect when the termination petition was filed as requiring courts to "consider *all* of the statutory factors" when making a best interest analysis "to ensure that every parent receives individualized consideration before fundamental parental rights are terminated." *In re Gabriella D.*, 531 S.W.3d 662, 682 (Tenn. 2017) (emphasis added). Therefore, the juvenile court properly considered both factors one and two when making its best interest determination.

Next, the juvenile court considered whether Mother maintained regular visitation and had a meaningful relationship with the children. *See* Tenn. Code Ann. § 36-1-113(i)(3), (4). The evidence in the record establishes that Mother maintained regular visitation with the children throughout the custodial episode. Therefore, factor three weighs against termination. Regarding factor four, Mother established a meaningful relationship with Trinity because Trinity was interactive and involved during the visitation with Mother. The same could not be said for the other two children, however. James was often hateful towards Mother during the visits and would tell Mother that he did not love her. As for Oaklee, he was removed from Mother's custody at such a young age that the foster parents were the only parents he had ever known. He merely recognized Mother as someone who visited him. As to Trinity, factor four weighs against terminating Mother's parental rights, but as to James and Oaklee, it weighs in favor of termination.

The juvenile court also found that the fifth best interest factor was relevant and weighed in favor of termination. This factor considers "[t]he effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition." Tenn. Code Ann. § 36-1-113(i)(5). At the time of trial, Trinity and

James had been in the foster home since April 2019, and Oaklee had been in the foster home since October 2019. All three children were doing well in the foster home and considered it their home. They had bonded with the foster parents and often referred to them as "mom" and "dad." The foster family has the resources to care for the children and wants to adopt them should they become available for adoption. Mother, on the other hand, has done little to remedy her drug abuse issues and failed to obtain and maintain stable income and housing.

Mother argues that this factor is inapplicable because "[n]o one is suggesting a change in caregivers." To support her argument, she relies on the following quote from *In re J.R.P.*, No. M2012-02403-COA-R3-JV, 2013 WL 4477860, at *10 (Tenn. Ct. App. Aug. 19, 2013): "a decision not to grant a petition to terminate parental rights does not mean that custody of the child is returned to the respondent parent." Mother mistakenly interprets this statement as requiring that a parent request for a child to be returned to his or her custody for factor five to be applicable. Mother's reliance on this statement in *In re J.R.P.* is misplaced. The *In re J.R.P.* court made the quoted statement after considering all of the relevant best interest factors and concluding that it was not in the best interest of the child to terminate the mother's parental rights simply to explain that its decision not to terminate parental rights did not mean that the child would be returned to the mother's custody. *Id.* In *In re J.R.P.*, the court did not hold that a parent must request that a child be returned to his or her custody for factor five to be applicable. We again emphasize that our Supreme Court held that, under the version of the statute in effect when the termination petition was filed, a court must consider all of the statutory factors when determining whether termination of a parent's rights is in the best interest of a child. The juvenile court, therefore, properly considered this factor. This factor weighs in favor of termination.

The sixth best interest factor considers whether the parent "has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child or another child or adult in the family or household." Tenn. Code Ann. § 36-1-113(i)(6). As discussed above, Mother committed severe abuse against Oaklee by using drugs during her pregnancy. As the juvenile court found, this factor favors termination.

The seventh best interest factor considers the parent's home environment. *See* Tenn. Code Ann. § 36-1-113(i)(7) ("Whether the physical environment of the parent's . . . home is healthy and safe, . . . or whether there is such use of alcohol, controlled substances or controlled substance analogues as may render the parent . . . consistently unable to care for the child."). Mother failed to address her drug abuse issues and tested positive for drugs multiple times. For instance, she tested positive for amphetamine, methamphetamine, and THC in September 2019; for amphetamine, benzodiazepine, methamphetamine, opiates, and THC in January 2020; and for methamphetamine and amphetamine in May 2020. She also engaged in other criminal activity that resulted in multiple arrests while the children were in DCS's custody. This factor favors termination.

The eighth best interest factor considers whether the parent's mental or emotional status would be detrimental to the child. *See* Tenn. Code Ann. § 36-1-113(i)(8). The parties presented no evidence regarding this factor during trial. Thus, the juvenile court correctly found that this factor did not weigh in favor of termination.

Finally, the juvenile court found that the ninth best interest factor weighed in favor of termination. This factor considers whether a parent "has paid child support consistent with the child support guidelines." Tenn. Code Ann. § 36-1-113(i)(9). The record shows that Mother failed to pay any child support. Although Mother claimed to have bought the children food and toys during visits, the DCS caseworker who supervised the visits testified that Mother's grandmother was the one who paid for these items. Thus, we agree with the juvenile court that this factor favors termination.

After considering the entire record, we conclude that the combined weight of the proof establishes by clear and convincing evidence that termination of Mother's parental rights was in the children's best interest.

CONCLUSION

We affirm the juvenile court's termination of Mother's parental rights on both statutory grounds and affirm the juvenile court's conclusion that termination of Mother's parental rights is in the best interest of the children. Costs of appeal are assessed against the appellant, Chelsie S., for which execution may issue if necessary

_/s/ Andy D. Bennett_____
ANDY D. BENNETT, JUDGE